FREDERICK P. JOHNSON *et al. vs.* SETH B. STITT *et al.*

NEWPORT—OCTOBER 7, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Abandonment of Easement. Non-user.*

A. and B. were owners of estates separated by a strip of land, over which B. had a right of way, as well as the fee to the centre. The strip had never been used as a way. A. erected an expensive residence on his land, laying out the grounds so as to include the whole of the way, and also erected an iron fence on his lot which extended across the end of the way. B. knew of this, and made no objection. Subsequently the fence around B.'s lot was removed, except in front, and a post set in the corner of the lot, A. and B. being present. The driveway of A. crossed a corner of the way. A. cut the grass and cultivated flowers on the way and occupied it as a part of his estate, but not for twenty years. The way was not assessed to any one, B.'s lot was unimproved, and there

was no occasion to use the way. During the time referred to the lot was for sale, the advertisement stating that a way twenty feet wide was to be opened beyond the east line :—

*Held,* that the question of abandonment of an easement is one of intention, to be determined from the facts.

*Held,* further, that the acts relied on to constitute abandonment must not only be voluntary, but of such a character as unequivocally to show an intention to abandon the easement.

*Held,* further, that in the absence of any proof that anything was ever said between A. and B. about the erection of the fence and the use of the way by A., the mere acquiescence of B. in the acts of A. did not constitute an abandonment of the easement.

*Query,* whether, if the land had been improved and B. had used some other way, this being more or equally convenient, such proof would have been sufficient.

*Query,* whether, if the obstruction were a permanent structure, instead of one that could be removed with little expense and without serious injury, equity would interfere.

BILL IN EQUITY for an injunction. The premises in dispute are shown upon the accompanying plat, and the facts of the case are fully stated in the opinion. Heard on bill and answer. Relief granted.

TILLINGHAST, J. The complainants seek by this bill to obtain a mandatory injunction for the removal of a fence which, they allege, obstructs a way between their land and that of the respondents. The case shows that on March 3, 1879, the respondent Seth B. Stitt conveyed to William H. Smith, the complainant's ancestor in title, the lot of land delineated on the plat or sketch hereto attached as "lot A." At the time of the making of the conveyance to said Smith, Stitt was the owner of all the land delineated on said plat, and, in connection with others who formerly owned the land with him as tenants in common, had previously caused a plat thereof, of which the one above delineated is a reproduction in so far as it concerns the questions raised by this bill, to be recorded in the records of land evidence of the city of Newport. In the partition deed of the premises represented by said plat, made on March 30, 1878, it is stated that "Touro Park Place is for the exclusive use of the estates partitioned hereby, abutting thereon." It is also referred to

therein as a "way." In the deed from Stitt to Smith, the lot is bounded "east on a way twenty feet in width, then measuring sixty-eight feet and nine-tenths." And in a previous agreement to sell said lot, made on July 31, 1878, Stitt says that he "has sold to Wm. H. Smith a lot of ground on Pelham street, adjoining the property of said Smith and R. R. Hazard, and the court, as per map on file in this city," &c. Although the answer denies that it was the intent of the grantor to convey any rights of way by said deed to Smith, yet this position is not seriously urged in argument, nor do we see how it could be, as the language of the agreement to sell and of the deed, taken in connection with the conduct of the grantor in the making and recording of said plat, conclusively shows that he intended to convey a right of way in said "Touro Park Place." See *Chapin* v. *Brown*, 15 R. I. 579. And, moreover, not only was a right of way conveyed by said deed to Smith, but also—the deed bounding him on said way—a fee in the land itself, to the center of said way. *Anthony* v. *Providence*, 18 R. I. 699 ; *Bentley* v. *Root*, 19 R. I. 205 ; Jones on Easements, § 421.

It clearly appearing, then, that Smith acquired a right of way in the whole of said strip of land, as well as the fee to the center thereof, by virtue of his deed from Stitt, the next and only other question in the case—and this is really the only question before us—is whether he subsequently abandoned the same, or, by acquiescing in the occupancy and control thereof by the respondents, estopped himself from claiming a right in said way.

The substantive facts bearing upon the question of abandonment are these : The strip of land designated as "Touro Park Place" has never been used as a way. In 1879–80 Mr. Stitt erected an expensive summer residence on his said land, laying out the grounds thereof so as to include all of said way. He also erected an iron fence on his lot, which extended across the end of said way next to Pelham street, and this fence has since been maintained as thus erected. At the time the fence was erected Mr. Smith lived in his house near by, and knew of the building of the fence and made no

objection thereto.    After the iron fence was erected, the slat fence around Smith's lot (purchased of Stitt) was removed, except in front, and a post was set in the ground in the place of the fence post removed at the southeast corner of the lot, Stitt and Smith being present when it was set.   Since then the Smith and Stitt lots have been as one, so far as fences are concerned.   The driveway from the west entrance of the Stitt estate to the stable crosses the southeast corner of said way.   No building or structure of any kind has ever been erected on said way, although it has been laid out and occupied by Stitt as a part of his estate ever since the erection of said fence.   He has cut the grass growing thereon, and also cultivated flowers thereon to some extent, and has used a part thereof in connection with his driveway, as aforesaid. In 1878 the land included in said "Touro Park Place" was taken off the city tax list by the assessors, since which time it has not been assessed to any one, and no one has paid taxes thereon.   The Smith lot has been unimproved, beyond the growing of trees thereon and the cutting of the grass, and Smith has held it for sale, except a strip ten feet wide on the west, as shown by his letters to Stitt soon after its purchase, and by the following advertisement of the same for a month in 1896 in a Newport newspaper, viz.:

"FOR SALE.

For Sale—Lot on Pelham street, opposite band stand ; about 4,828 square feet.   Way 20 feet wide to be opened beyond east line, used free of cost.   Part can remain on mortgage at 5 per cent.   Inquire at 135 Pelham street."

In view of the foregoing facts, respondents' counsel argues that, the complainants' ancestor in title having stood by and seen respondents lay out their grounds and erect an expensive residence thereon, together with an iron fence which cuts off said way, the case falls within the equitable rule of abandonment of the right of way.

(1)    The question of abandonment, in a case of this sort, is one of intention, and must therefore be determined by the par-

ticular facts which are made to appear therein. Washburn's Easements and Servitudes, 4 ed. 709. Mere non-user of a way, while it may be evidence of an intention to abandon it, will not operate to extinguish the same unless the non-user has continued for at least twenty years. *Steere* v. *Tiffany*, 13 R. I. 568. And many cases hold that where the easement is created by grant it cannot be lost by mere non-user for any length of time. These cases are collected in 10 Am. & Eng. Ency. L. 2 ed. on p. 436 in note 2. See *Welsh* v. *Taylor*, 134 N. Y. 450; also *Snell* v. *Levitt*, 110 N. Y. 595; Jones on Easements, § 863. In the case before us the proof shows that the non-user has not continued for twenty years. It also fails to show any acts on the part of the owner of the dominant estate which clearly indicate an intention to abandon the way in question. And the rule seems to be that the acts of the owner of the dominant estate relied on to constitute abandonment must not only be voluntary, but of such a character as unequivocally to show an intention to abandon the easement (see cases in 10 Am. & Eng. Ency. L. 2 ed. p. 435, note 1) unless other persons have been led by such acts to believe the right abandoned and to act upon this belief so that an assertion of the right will be to their injury. *White's Bank* v. *Nichols*, 64 N. Y. 65.

To make out a voluntary abandonment of an easement the proof must go to this extent, as declared by Chief Justice Shaw: "First, that the acts relied on were voluntarily done by the owner of the dominant tenement, or by his express authority; secondly, that such party was the owner of the inheritance, and had authority to bind the estate by his grant or release; and thirdly, that the acts are of so decisive and conclusive a character as to indicate and prove his intent to abandon the easement." *Dyer* v. *Sanford*, 9 Met. 395.

The proof here shows that the complainants' ancestor in title did nothing showing an intention to abandon the easement, except that he acquiesced in the occupation and control of the way by the respondent Stitt. It does not show that anything was ever said between them about the erection of said iron fence, or about the use and occupancy of the way

by Stitt. It is true Stitt testifies that "We had abandoned that court after the slat fence was taken down," that he always considered it a part of his grounds from the time he deeded the lot to Smith, and that after the lot was deeded he never heard Smith say a word about opening the way. As to the first statement, it is evidently only a conclusion of the witness, without anything stronger than his own wish that it might be so to base it on, as he fails to show that anything whatever was said or done or even acquiesced in at that time by Smith to warrant such an inference. The statement that he always considered the way a part of his grounds from the time he deeded the lot to Smith is overborne by his letter to Smith dated April 2, 1879—a month after the deed was given—in which he says, in speaking of selling Smith another lot on said plat, "The best swap you or I could do would be to close the court. If you bought the back lot you would get ten feet all the way back for nothing." The only act, strictly speaking, which the evidence shows that Smith ever did in the premises was to agree to the setting of a post at the southeast corner of his lot, on said way, as a boundary, to take the place of the old fence post then removed. And we fail to see that this act in any way shows, or even tends to show, an intention to abandon said way. The decisive question, then, is whether, in the circumstances aforesaid, the mere acquiescence of said Smith in the acts of the respondents, as above stated, constituted an abandonment of the easement. We do not feel clear that it did. During the time that Smith acquiesced in the acts of ownership exercised by Stitt, the dominant estate was unimproved, and the owner had no occasion to use the way. This fact materially lessens the force of the evidence of non-user. If he had used some other way when this was more or even equally convenient, a presumption might arise that he had abandoned this. If he had allowed the owner of the servient estate to erect a permanent structure, like a house, barn, or other building, on the way, without objection, the case would be very different.

The consequence of acquiescing in such an act is well illustrated in *Aldrich* v. *Billings*, 14 R. I. 233, where the plain-

tiff permitted the erection of buildings on a part of a strip of land over which a negative easement existed in his favor, and afterwards attempted to enjoin the erection of a building on another part of the same strip.   The injunction was refused, this court stating the law as follows: "It is familiar law that a party may by *laches* deprive himself of equitable remedy against an injurious act; but when to delay is added acquiescence in the act, inducing large expenditures in con-

BELLEVUE AVENUE.

STITT.

HAZARD.

HAZARD.

STITT.

PELHAM STREET.

PROSPECT HILL STREET.

TOURO PARK PLACE.

20

HAZARD.

68.9

CORNER POST.

LOT A.

STITT.
5,730 sq. ft.

91.89

HAZARD.

79.5

20

49

W. H. SMITH.

sequence, it is too clear for discussion that a court of equity cannot interfere to undo that which a complainant himself has stood by and permitted to be done." See also *Bentley* v. *Root*, 19 R. I. 205. The erection of the fence across the way in question is a very different thing. It can be removed with little expense and without serious injury to the owner. *Hayford* v. *Spokesfield*, 100 Mass. 491. He put it there in plain violation of his own grant, without any license or agreement on the part of the owner of the dominant estate, and hence took the risk of having to remove it.

On the whole, we do not think it clearly appears that the way in question has been abandoned, and we therefore decide that the complainants are entitled to relief.

*Darius Baker*, for complainants.

*Wm. P. Sheffield, Jr.*, for respondents.