**Charles NAHABEDIAN**

v.

**Myer JARCHO et al.**

**No. 83–411–Appeal.**

Supreme Court of Rhode Island.

June 6, 1986.

· Arthur A. Thovmasian, Jr., Cranston, for plaintiff.

Stephen G. Linder, Martin W. Aisenberg, Jones & Aisenberg, Lori Caron Silveira, Licht & Semonoff, Providence, for defendant.

OPINION

KELLEHER, Justice.

In this Superior Court civil action the plaintiff seeks specific performance of an agreement calling for the construction of a circular driveway and the creation of reciprocal easements in his land and the land of the defendants—or, in the alternative, dam-

ages in the amount of $200,000. The trial justice determined that the plaintiff had abandoned any claim of an easement and granted the defendants' motion to dismiss, which was filed pursuant to Rule 41(b)(2) of the Superior Court Rules of Civil Procedure after the plaintiff had presented all of his testimony relating to the issue of liability. The plaintiff is a dentist, and the individual defendants are certified public accountants. Hereafter we shall refer to the plaintiff as "the dentist" and to the individual defendants as "the accountants."[1]

The record indicates that in 1976 the dentist was looking for a parcel of real estate upon which to construct an office building and relocate his practice. The dentist's brother-in-law was president of a realty corporation that owned a parcel of real estate situated in Warwick on the westerly side of Jefferson Boulevard. The corporation was about to sell one of the two lots in the parcel to the accountants, and in March 1977 the dentist met with his brother-in-law and two of the accountants. Eventually, it was agreed that the dentist would buy one lot and the accountants would purchase the other. At that time the dentist's brother-in-law suggested that a circular driveway that would begin on one lot and terminate on the other, affording access to Jefferson Boulevard, might be beneficial to both occupants.

Title to both lots was transferred at a closing that took place in late May 1977. At that time the litigants entered into a written agreement that granted to each party easements over the other's land for the purpose of providing access to and parking on their respective parcels. The agreement provided that the accountants would design a right-of-way or "circular driveway" not less than thirty feet in width, commencing on the dentist's lot, running in a curved manner across both parcels, and then terminating on the accountants' lot along the westerly line of

Jefferson Boulevard. Both parties to the agreement, each in cooperation with the other, were required to construct and maintain a right-of-way, as delineated by the engineers and/or architects hired by the accountants, and pay their own costs on their respective parcels. The agreement further provided that the rights-of-way on both premises "shall meet at equal grades and no obstruction shall be erected or permitted upon either premises which will in any way interfere with any rights granted by [the] agreement."

Two days after the closing, the dentist filed a zoning application in the city of Warwick, seeking an exception to the building set-back requirement for his dental office. He also submitted a drawing of his proposed office building, complete with a parking lot but without any indication that a circular driveway was to be installed upon the premises. The accountants also filed a zoning application with drawings of their proposed structure, and their plans contained no indication that there was to be a circular driveway.

In October of 1977 the dentist's engineer prepared a detailed plan of the office building and the adjoining parking lot. Again, it contained no provision for a circular driveway. The dentist began site preparation for the construction of his office building in December of 1977. The parking lot was completed in late October of 1978, and the office building was completed two months later.

The dentist testified that he first learned of the accountants' lack of interest in constructing a circular drive in November of 1978. He obtained this information from the local building inspector. However, under cross-examination the dentist conceded that the notes he kept during his construction operation indicated that on October 5, 1977, his draftsperson was informed by the

---

1. The last three named defendants are J.S. & Y. Realty, Citizens Savings Bank, and Citizens Trust Company. Their involvement in this dispute is minimal. J.S. & Y. Realty is a partnership organized by the accountants, and the banks provided the mortgage financing for both litigants.

accountants' architect that "the circular drive [was] out."

In early November 1978 the dentist sent a letter to the accountants insisting on compliance with the original agreement, including the circular-driveway proviso. However, when the accountants began construction activities in October of 1978, they located their building on the front section of their lot. This location would place at least a portion of the structure right in the middle of the proposed driveway.

The trial justice, in ruling on the motion to dismiss, determined that the May 1977 agreement gave the respective litigants an easement in each other's land that would provide access to their respective parcels of land and accommodate vehicular and pedestrian traffic. However, the trial justice also ruled that the dentist, by virtue of his conduct, had abandoned his easement and all rights he may have had relative to the maintenance of the circular driveway.

The trial justice observed that the dentist never gave great weight to his brother-in-law's suggestion for the circular driveway and that the dentist's subsequent actions clearly demonstrated an intent to abandon the driveway proposal. In focusing his attention on the dentist's actions rather than on his protestations, the trial justice pointed to (1) the absence in the dentist's application to the zoning board, which was filed two days after the easement agreement had been executed, of any provision for a circular driveway; (2) the October 1977 plans for his dental office, which did not include a circular driveway; (3) the actual location of the patients' parking lot, which was constructed in accordance with the dentist's October plan and which made the circular driveway an impossibility; (4) the dentist's complete indifference once he learned in October 1977 of the accountants' lack of interest in going the circular-driveway route; and (5) the incompatibility of the location of the dentist's parking lot and his professed desire for a circular driveway.

In reviewing a ruling on a motion to dismiss pursuant to Rule 41(b)(2), this court must determine whether (1) the findings of the trial justice are supported by evidence in the record and (2) the trial justice has applied the correct rule of law. *J. K. Social Club v. J. K. Realty Corp.*, 448 A.2d 130, 133 (R.I. 1982).

The dentist contends that the trial justice erred in his determination that he had abandoned any claim to an easement on the adjoining lot. He argues that his acts were not of such a decisive character as to unequivocally demonstrate an intention to relinquish his rights to the easement permanently but were, at most, temporary obstructions.

The accountants quite naturally insist that the trial justice's findings of fact should not be disturbed. They assert that the determination of abandonment was an inference drawn from the dentist's conduct, supported by the evidence adduced at trial.

The question of abandonment of easement rights is one of intention that must be determined from the facts of each case. *Spangler v. Schaus*, 106 R.I. 795, 806, 264 A.2d 161, 167 (1970). In order to establish an abandonment of an easement, it is necessary to prove that the holder of the easement acted voluntarily and in such a decisive manner as to show an unequivocal intention to abandon the easement. *Steere v. Tiffany*, 13 R.I. 568, 571 (1882). Evidence that the easement holder acted in a manner inconsistent with a further desire to use the easement is the most persuasive type of evidence on the question of abandonment. 3 Powell, *The Law of Real Property*, ¶ 423 at 34–252 (1985).

The trial justice applied the law of *Steere v. Tiffany* to the instant case, finding the cases factually similar. In *Steere* a private way, created by implication or estoppel, existed for the common use of the owners of the land that bordered the way. Subsequently, a street was laid out diagonally across the way. The plaintiff moved his house forward onto the private way, and a neighbor of the plaintiff's did the same.

However, when the defendant took possession of a small portion of the way, the plaintiff sued him for obstructing the easement.

The court determined that the way was intended to exist as a whole, not in halves. The court held that when the plaintiff moved his house forward, he took half of the way, abandoning any rights he had in the other half, and the way as originally established had practically ceased to exist. The court noted that it was virtually impossible to hold the defendant liable without implicitly holding that the way as established still existed and that the plaintiff was also liable for obstructing it.

The most recent Rhode Island case in which this court upheld the abandonment of the easement by its holder is *Charles C. Gardiner Lumber Co. v. Graves*, 63 R.I. 345, 8 A.2d 862 (1939). The evidence in *Gardiner* showed that the streets and gangways in question had been used for a period of forty years for the storage of lumber and a planing mill. The plaintiff piled lumber on the land, enclosed it with fences, and maintained exclusive control of the gates. The defendant had also agreed, many years prior, to. the relocation of a boundary-division line and the construction of a new fence that enclosed the streets and gangways and gave exclusive control of their use to the plaintiff.

The court in *Gardiner* held that the trial court did not err in its decision that the defendant had abandoned whatever easement it may have had over the land, noting (1) the permanent nature of the physical obstructions inconsistent with the easement, (2) the defendant's affirmative action in agreeing to the relocation of the boundary, (3) the defendant's failure to object for a period of time in excess of the time fixed for quieting title, and (4) the plaintiff's reliance on the defendant's conduct over a long period.

In the case at bar the evidence on the record supported the trial justice's finding that the dentist's conduct showed a decisive intent to abandon his easement rights. The dentist did not merely acquiesce to the control of the land by another but permanently obstructed the easement by constructing a parking lot over the general area designated for the circular driveway. The photographs of the disputed easement show that the dentist paved his entire lot, an act inconsistent with his alleged desire to use that section of land for a circular driveway. Furthermore, his building plans that depicted the parking lot as constructed were drawn in October of 1978. This clearly indicated that he had not intended to construct the proposed circular driveway since that time. The trial justice also found from the dentist's testimony on cross-examination that he knew the accountants did not plan to construct the driveway in October of 1977 but failed to make any effort to enforce his rights under the agreement for more than one year. The trial justice's determination that the dentist intended to relinquish his rights under the `agreement was clearly supported by the record.

The dentist also argues that the trial justice applied the wrong rule of law concerning abandonment of easement rights. He insists that in order to establish abandonment, Rhode Island law requires a factual finding of reliance, citing *Gardiner Lumber Co.*, and the trial justice failed to make such a finding.

The sentiments expressed in *Gardiner* were repeated in *Matteodo v. Pesce*, 68 R.I. 188, 196, 27 A.2d 109, 112–13 (1942), where this court said:

> "Abandonment of an easement is a matter of intention. In order to establish such abandonment the evidence must show that the owners of the dominant tenement acted voluntarily and in so decisive a manner as to indicate clearly their intention to abandon and the reliance of the owners of the servient tenement upon such acts."

The issue in *Matteodo* was whether the plaintiffs had presented sufficient evidence to support their claim of a common-law

easement of gas, water, and drain pipes by prescription; and if the plaintiffs did in fact present such evidence, were negotiations between the litigants, subsequent to the establishment of the right, conduct that required a conclusion that the easement had been abandoned. The court ruled in favor of the plaintiffs on both issues. In both cases reference was made by this court to the necessity for proof of reliance by the servient estate.

However, just before the turn of the century the court in *Johnson v. Stitt*, 21 R.I. 429, 433, 44 A. 513, 514–15 (1899), distinguished the termination of an easement by voluntary abandonment of the easement by acts of the owner of the dominant estate from a termination by estoppel whereby the litigant is estopped from asserting the easement. The court in *Johnson* first stressed that to establish a voluntary abandonment of an easement, proof must be adduced that the acts relied on were voluntarily done by the owner of the dominant tenement or by his express authority and also stressed that the acts, to be effective, must be decisive and conclusive in character so as to indicate and prove the intent to abandon. The court in *Johnson* found no intent to abandon but did emphasize that if the owner of the dominant estate had permitted the servient tenant to erect a permanent structure, such as a house or a barn or other building, on the way without objection, "the case would be very different." *Johnson*, 21 R.I. at 434, 44 A. at 515. The court in *Johnson* at this point was actually referring to a termination of an easement by estoppel.

Powell in his treatise points out that the requisite estoppel consists of two parts:

"(1) [C]onduct on the part of the dominant owner reasonably causing the servient owner to believe that the easement is no longer desired; plus (2) conduct on the part of the servient owner in reliance upon the above described appearances, under such circumstances that a continuance of the easement would be seriously harmful to the servient owner." 3 Powell, ¶ 425 at 34–267.

The author also observed that the borderline between the terminability of easements by abandonment and by estoppel is somewhat "shadowy" because each requires conduct on the part of the dominant owner evidencing an intent not to make further use of the easement. In some cases the evidence of such conduct might well be sufficient to establish an abandonment, but when the operative facts include reliance by the servient owner on acts of the dominant owner, Powell suggests that the estoppel theory is the preferred route of terminating an easement. 3 Powell, ¶ 425 at 34–267, –268.

It is obvious from what we have said that the previous observations in regard to the necessity of showing reliance where one seeks termination of an easement by proof of abandonment were somewhat inaccurate. It is to be hoped that the difference between termination of easement by abandonment or by estoppel will now be recognized and maintained. In this case the evidence amply supports the trial justice's finding of a termination of the dentist's easement because he had abandoned all interest in any future use of the driveway approach espoused by his brother-in-law.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

SHEA, J., did not participate.