THOMAS GARRISON, Appellant, *v.* THOMAS J. RUDD, Appellee.

APPEAL FROM WINNEBAGO.

Where A., in a conveyance of land to B., — part of a quarter section — reserves to himself and his heirs, forever, the use of an alley twenty-five feet wide, from a road to a river, jointly with B ; and A, in the conveyance of another part of the same quarter section to C, also conveys all his right and interest to the said lane, it is held that the reservation is only of a joint use of the lane to A and his heirs, and is a personal right in A, irrespective of his domicil, and is in gross, and not to be granted over to another.

THIS cause was tried before SHELDON, Judge, and a jury, at April term, 1857, of the Winnebago Circuit Court. Verdict and judgment for five dollars and costs.

The case is fully stated in the opinion of the court.

W. H. L. WALLACE, for Appellant.

ANSON S. MILLER, for Appellee.

BREESE, J. This was an action of trespass *quare clausum fregit*, brought by Rudd against Garrison, and tried at the February term, 1857, of the Circuit Court of Winnebago county.

The declaration alleges trespasses committed by Garrison on a close, situate in the city of Rockford, " abutting towards the west, on Main street, running parallel with Rock river, towards the east on Rock river, towards the south on a certain close in possession of George W. Rudd, and towards the north on a certain close in possession of Elizabeth Martin." The alleged trespasses were tearing down gates and fences, and going upon the land with cattle, etc.

The defendant filed three pleas:

1st. Not guilty.

2nd. That the premises were a lane or private way leading from the highway to the river, and that defendant was entitled to use it, and in order to his enjoyment of that right he removed the gate and fence erected by plaintiff across said lane, doing no unnecessary damage, etc.

3rd. License.

The plaintiff took issue on first plea, and by leave of the court, filed two replications to the second plea.

1st. That the premises were not a lane or private way, and that defendant was not entitled to use it.

2nd. That defendant had no right of way, etc.

To the third plea plaintiff replied, denying license. Issues were joined on the several replications.

The cause was tried before a jury, who found the defendant guilty, and assessed plaintiff's damages at $5.

Defendant moved for a new trial, which motion, at the April term of said court, was overruled, and judgment rendered on the verdict.

The bill of exceptions shows, that on the trial, plaintiff proved by George Rudd, that he knew the premises where the trespasses were committed, since 1852. They are in the city of Rockford, and were owned and occupied by the plaintiff; that there was a lane fenced out by the plaintiff in 1853, on or near

the south line of plaintiff's premises, and on the north line of witness' premises; that the lane was twenty-five feet wide, and principally on the south end of plaintiff's premises. The land of the plaintiff and of witness adjoined; the witness' land being south of plaintiff's, and both lying east of the public road leading north from Rockford, being a continuance of Main street, in said city; that the line between plaintiff's premises and witness' was not exactly straight, and the lane running at right angles with the public road included at the east end a small part of witness' land; that until the south line of the lane struck witness' land, the whole twenty-five feet was on plaintiff's land, and that plaintiff erected a fence and gate across said lane upon the line of the public road in the spring of 1855; that defendant tore down the gate and fence in July, 1856. Witness thought the damage was about $10. Defendant broke and cut down the gate and fence with an axe the whole width of the twenty-five feet. The fences on each side of the lane, running to the river, were twenty-five feet apart, and were fenced out by plaintiff in 1853.

Plaintiff also proved that defendant's cattle were in the lane after the fence and gate were removed.

Defendant then proved that the gate and fence were carefully removed, and the materials carefully set up against the fence.

Defendant also proved that he lived in the same house and occupied the same premises occupied and owned by James Taylor at the time plaintiff purchased his land from Taylor, and that the two pieces were separated by the public road running north from Rockford, a continuation of Main street in said city, and all belonged to the same congressional subdivision of land.

The defendant then offered in evidence two deeds from James Taylor.

The first was a deed from James Taylor and wife to plaintiff, Rudd, dated Jan. 26, 1853, for a part of the north part of Section 23, T. 44 N., R. 1 E. 3rd P. M. — commencing at a point in the middle of the river road, on the west side of Rock river, leading from Rockford to Rockton, (describing the premises in which the alleged trespasses were committed, bounded west by the road, south by George W. Rudd's premises, east by the river, and north by Elizabeth Martin's premises.) "The party of the first part reserving to themselves and their heirs forever the use of an alley twenty-five feet wide, on or near the south line of the above conveyed tract jointly with the said party of the second part and his heirs—said alley to extend from said river road to the river."

The second of said deeds was a deed from James Taylor and wife to the defendant, dated June 22, 1853, for a part of the

north part of the north-west quarter of Section 23, T. 44 N., R. 1 E. 3rd P. M., and some other land. "And the party of the first part also hereby conveys to the party of the second part and their heirs and assigns, all the right and interest that the said party of the first part, their heirs or assigns, have in and to a lane or passage way from said river road to the river, on or near the south line of T. J. Rudd's land."

These deeds were objected to by plaintiff, and the objection sustained by the court, and the deeds excluded, and defendant excepted.

The defendant then offered to prove that the said lane had been used for the purpose of allowing the cattle of Taylor and the defendant to go to the river for water from the time Rudd, the plaintiff, went into possession. The plaintiff objected to the introduction of said proof, and the court sustained the objection and excluded the proof, and defendant excepted.

The jury found defendant guilty. Defendant moved for a new trial. The court overruled the motion and gave judgment, and defendant excepted.

The errors assigned are:

1st. The court erred in excluding said deeds, and each of them offered in evidence by defendant.

2nd. The court erred in excluding the proof offered by the defendant, showing a user and acquiescence by plaintiff.

3rd. The court erred in overruling the defendant's motion for new trial.

4th. The court erred in rendering judgment on the verdict.

5th. The court erred in rendering the judgment aforesaid in manner aforesaid.

It will be perceived from the statement of the case, and the evidence, that two principal questions are presented for determination, one, *novus hospes* in our courts, and involving the whole merits of the controversy, the other, quite subordinate in character, and going only to the extent of the damages, which, as assessed by the jury, are very small indeed.

We will dispose of this inferior question first, by saying that the case shows the claim for damages was confined wholly to breaking down the gate and pickets, and no damages claimed for injury to the soil or herbage by cattle, and therefore, proof that the lane or alley had been used by Taylor and Garrison, his grantee, as a passway for their cattle to go to the river, from the time of the sale to Rudd and his going into possession, was inadmissible, and properly excluded by the court. User for any length of time, can be no justification, nor can it mitigate such a trespass as is shown by the proof in the record. Admitting his

cattle had used there, is the enormity of the offense charged, in any degree lessened ?   We think not.

The important question in the case arises out of the rejection of the two deeds, which the appellant offered as evidence.   If they tended in any manner to prove the issue between the parties, they should have been admitted.   Did they so tend ?   The issue was that the *locus in quo* is a lane or private way leading from the public highway to the river, and that appellant was entitled to use it, and in order to his enjoyment of that right, he removed the gate and fence erected by the appellee across the lane, doing no unnecessary damage.   The proof shows that the appellee made this lane in 1853, on or near the south line of his land, situate east of the public road leading north from Rockford, being a continuation of the main street of that city, and that he erected a fence and gate across this lane, upon the line of the public road, in the spring of 1855, and that appellant tore them down in July, 1856.   He broke and let down the gate and fence with an axe, the whole width of the twenty-five feet.   The appellant proved that the gate and fence were carefully removed, and the materials carefully set up against the fence, and also proved that he lived in the same house and occupied the same premises owned and occupied by James Taylor at the time he purchased of Taylor, and that his land and appellee's land were separated by this public road, and all belonged to the same congressional subdivision of land.

By the accompanying diagram, exhibited on the argument, and admitted to be correct, the situation of the several tracts of land, and the *locus in quo*, is exhibited.

Garrison *v.* Rudd.

It will be seen that neither *terminus* of this alley is upon appellant's land, nor do they touch it. They are both on the land of appellee.

The appellant's claim is, that he has a right of way through this alley, by the deed from Taylor to Rudd, and from Taylor to himself. If so, the deeds were improperly excluded, and this is the question for our determination.

A private right of way is defined to be that right which one man has of going over another's land, and is confined either to the inhabitants of a particular district, or to those occupying or owning certain estates, or it extends to one or more individuals in certain.

To every private way there are two essential requisites, first, the *terminus à quo,* or the point or place from which the grantee

is to set out in order to use the way, and the *terminus ad quem*, the place where the way is to end ; and second, that the grantor  has the right, not the mere revocable permission, of setting out from the *terminus à quo*, and proceeding to and entering the *terminus ad quem*. It is one of the most important of incorporeal hereditaments, in which one man has an interest and a right, though another man is the owner of the soil over which it is claimed. It is simply an easement or a privilege, conferring no interest in the land. 1 Crabb's Real Property ; 2 Black. Com. 35 ; 2 Bouv. Inst. 187.

These easements may be acquired from necessity, by grant, by reservation, by prescription, and by custom—perhaps by condemnation under legislative act, and they are appendant or appurtenant, or in gross, personal merely.

They are said to be appendant or appurtenant when they are incident to an estate, one *terminus* being on the land of the party claiming, must inhere in the land, concern the premises, and be essentially necessary to their enjoyment. They are of the nature of covenants, running with the land, and, like them, must respect the thing granted or demised, and must concern the land or estate conveyed. They pass by a conveyance of the land, under the term " appurtenances," without being expressly named. 3 Kent's Com. 420; Woolrych on Ways, 14; 1 Crabb's Real Property, 233.

And such an easement is appurtenant to all and every part of the land, no matter into how many parts it may be subdivided on sale ; to each part, however small, it attaches. It is to be enjoyed by all the owners of the estate to which it is incident, and cannot be separately sold and conveyed to another. *Watson* v. *Brown*, 1 Serg. & Rawle R. 227.

This right is said to be in gross when it is not attached as an incident to an estate, and is conferred by deed, or by reservation in a deed, the distinction being quite manifest between a grant of land where a way is appendant which carries the way, and a grant of a way separate from any estate, in gross or specially. A right of way claimed by express reservation in a deed, as in this case, is subject to the same construction as in the case of an express grant, for what will pass by words in a grant will be excepted, by like words, in an exception. Sheppard's Touchstone, 100.

It will be seen, by reference to the clause in the deed to Rudd, that only a joint use with him of this alley is reserved to Taylor and his heirs—a perpetual license to use it, irrespective of the ownership of any land or estate. This makes it a personal right, wholly independent of Taylor's domicil, and is confined to his person, and is in gross ; and since a way append-

ant cannot be turned into gross, because it is inseparably united to the land to which it is incident, so a way in gross cannot be granted over, because of its being attached to the person. Woolrych on Ways, 13. *also 5 H.7.7.*

In 2 Black. Com. 35, 3 Kent Com. 420, Woolrych on Ways, 1 Crabb's Real Property, 2 Bouvier's Inst., the principle is recognized that when the owner of land grants to another the liberty of passing over his ground, or through his private alley, to go to church, to market, or the like, the gift or grant is particular and confined to the grantee alone ; it dies with the person ; and if the grantee leaves the country, he cannot assign over his right to any other. So in Sheppard's Touchstone, 239, if license be granted a man to walk in another's garden, or to go through another man's ground, he cannot assign this to another. This is not only the law, but it is common sense.

This right to use this alley jointly with Rudd, reserved by Taylor in his deed, could not ~~~~~~~~~~ ed by Taylor to appellant, for the reasons given, and the ~~~~ were, therefore, properly excluded. If it could be and was legally assigned by Taylor to Garrison, it gave him no right to remove the fence and gate. It is no justification for such a trespass.

The case of *Ackroyd* v. *Smith*, 70 Eng. C. L. R. 164, cited by appellee's counsel on the argument, is analogous to this, and recognizes fully the principles here laid down.

The judgment is affirmed.

*Judgment affirmed.*