JOHN CADWALADER *vs.* WILLIAM EASTON BAILEY *et al.*

Easements in gross, not *profits à prendre*, are neither assignable nor heritable.
Easements appurtenant are destroyed by severance.
Easements will be construed as appurtenant, and not in gross, if such construction is consistent with the nature of the right created, and with the intention of the parties creating it.
The easements and covenants relative to building, contained in a certain deed of land on Bellevue Avenue, in Newport, executed by Joseph I. Bailey and Alfred Smith to George Cadwalader, and dated October 15, 1852, construed.

BILL IN EQUITY for specific performance and for an injunction.

*Newport, September* 28, 1891. TILLINGHAST, J. This is a bill in equity brought by John Cadwalader, of Philadelphia, in the State of Pennsylvania, against William Easton Bailey and others, devisees under the will of Joseph I. Bailey, and the heirs at law of Alfred Smith, to have the respondents enjoined from violating a covenant contained in a deed from the said Joseph I. Bailey and Alfred Smith to George Cadwalader, dated October 15, 1852.

The bill shows that, at the time of the making of said deed, the said Joseph I. Bailey and the said Alfred Smith were seized and possessed as tenants in common in fee simple of a certain tract of land situate in the southeastern part of the then town of Newport, which tract included the land described in and conveyed by the deed aforesaid, and also included Bailey's Beach, so called; and that, being so seized and possessed, they executed and delivered to said George Cadwalader said deed of October 15, 1852; that in and by said deed the said Bailey and Smith conveyed to the said George Cadwalader, to him and to his heirs, certain land therein described, "together with a right to place a bathing-car, not to exceed eight feet by six in size, on the east half of the Bailey Beach, to be placed so as not to interfere with any rights the Olyphant farm may have to take sand or seaweed from said beach, with the rights to use said beach for the purpose of bathing;" and that in and by said deed the said Bailey and Smith covenanted as follows: —

"And we, the said Joseph I. Bailey and Alfred Smith, for ourselves, our heirs, executors, and administrators, do hereby covenant to and with the said George Cadwalader, his heirs and assigns, that no building excepting bathing-cars shall ever be placed upon the marsh or beach called Bailey Beach, that no building shall ever be placed to the westward of a line drawn southerly from Bellevue Street parallel to and distant five hundred and thirty-one feet westerly from the Ledge Road, and that none shall be placed on a knoll overlooking said beach and just north of the lower end of Bellevue Street; and further, that we will not, nor shall any person claiming under us or by our authority, go upon the east half of the said Bailey Beach for the purpose of collecting, securing, or taking away any sand or seaweed from said beach between the hours of sunrise and ten o'clock, A. M., during the months of July, August, and September in each and every year, nor permit any act or thing to be done which might reasonably obstruct the free use and enjoyment of said beach for bathing."

The bill further shows that the said George Cadwalader entered upon and took possession of the land to him conveyed, and thereafterwards, on the 18th day of August, 1864, by deed duly executed, sold, and conveyed to one William W. Tucker, his heirs

and assigns, the land which the said George Cadwalader had received as grantee in the said deed of October 15, 1852; but that the said deed from Cadwalader to Tucker contains the clause:—

"It is understood and agreed that the grantor reserves to himself, his heirs and assigns, the covenants and stipulations contained in a deed from J. I. Bailey and A. Smith, dated October 15, 1852, against building on certain sites near the bathing beach, and the right of bathing on said beach."

The bill further shows that the respondents are now seized and possessed of said marsh or beach called Bailey's Beach, and of the land adjacent thereto, as heirs of the said Bailey and Smith, both of whom are deceased, or as heirs or devisees of the said Bailey, and as heirs of the said Smith, and have been so seized and possessed since the deaths respectively of said Bailey and of said Smith; that the said George Cadwalader died, February 3, 1879, testate, leaving his wife, Frances Cadwalader, his sole devisee and legatee; that she died, testate, January 9, 1880, leaving the complainant, George Cadwalader, her residuary devisee and legatee. The bill further shows that the respondents, notwithstanding said covenants in said deed of October 15, 1852, contained, did, in the year 1890, erect on the marsh or beach called Bailey's Beach a permanent building of large size, and not bathing-cars, which building was placed, and is by the respondents still maintained, on said marsh or beach, to the detriment of the complainant, and in violation of his rights under the said covenants, and without his consent and in defiance of his protests.

The prayer of the bill is, that the covenants contained in said deed of October 15, 1852, may be declared valid and existent obligations upon the respondents; that they may be required to make specific performance thereof; that said covenants may be declared in favor of the complainant, his heirs and assigns, as valid restrictions upon said marsh and beach; and for an injunction. A plat of the premises is attached to and made part of said bill.

The answer admits the material allegations in the bill to be true except as to any wrongful or unlawful acts therein charged, but avers and sets up that the complainant has no title to the easements granted in and by said deed of October 15, 1852, *first,* because the same were wholly severed and extinguished by the

reservation in the deed from George Cadwalader to said William W. Tucker of August 18, 1864; or, *second,* because said easements were appurtenant to the land conveyed by said deed to Cadwalader, of which land no portion is owned or possessed by the complainant; or, *third,* because said easements were not appurtenant to said land, nor any land, but were rights in gross belonging to said George, and not assignable, nor inheritable, nor devisable. A ground-plan of the building is attached to and made part of the answer.

The case is before us on bill and answer, together with such evidence as to the situation and circumstances of the premises as the court was able to obtain from a personal view of the premises, which was had at the request of the parties, and from the statements of counsel.

The grounds upon which the complainant bases his claim to the relief prayed for are : —

*First.*   That the incorporeal rights given to George Cadwalader were not necessarily rights appurtenant to the land conveyed;

*Second.*   That, if appurtenant, they were not extinguished by severance; and,

*Third.*   That if they were rights in gross, and personal to said Cadwalader, they were not extinguished by his death.

The first question which arises therefore is, whether the rights granted to the said George Cadwalader by the deed of October 15, 1852, constituted an appurtenant easement to the land conveyed, or an easement in gross.

An appurtenant easement is an incorporeal right which, as the term implies, is attached to and belongs with some greater or superior right, something annexed to another thing more worthy, which passes as incident to it. It is a species of what the civil law calls a servitude.  Bouvier Institutes, n. 1600 *et sq.;* 3 Kent Comment. 344.  It is incapable of existence separate and apart from the particular messuage or land to which it is annexed, there being nothing for it to act upon.

In order to the existence of an easement of this sort, there must be two distinct tenements, the dominant, to which the right belongs, and the servient, upon which the obligation rests.  *Wolfe* v. *Frost,* 4 Sandf. Ch. 72;  *Wagner* v. *Hanna,* 38 Cal. 111, 116.

In *Keppell* v. *Bailey*, 2 Myl. & K. 517, the subject of cove-
nants running with the land was fully considered by Lord Chan-
cellor Brougham.   He there says : —

"The covenant (that is, such as will run with the land) must be
of such a nature as to 'inhere in the land,' to use the language of
some cases; or 'it must concern the demised premises, and the
mode of occupying them,' as it is laid down in others; 'it must be
*quodam modo*, annexed and appurtenant to them,' as one authority
has it; or as another says, 'it must both concern the thing demised
and tend to support it and support the reversioner's estate.'"   See,
also, *Spencer's case*, 5 Rep. 16, 1 Smith's Leading Cases, 134–137.

An easement in gross is a mere personal interest in the real
estate of another, and is not assignable or inheritable.   Washburn
on Easements, 4th ed. 12.

Chancellor Kent, in speaking of such an easement, says : "It
dies with the person, and it is so exclusively personal that the
owner of the right cannot take another person in company with
him."   3 Kent Comment. 420.

See, also, *Ackroyd* v. *Smith*, 10 C. B. 164; *Garrison* v. *Rudd*,
19 Ill. 558; *Post* v. *Pearsall*, 22 Wend. 425, 432; Woolrych on
Ways, 20; 2 Blackstone Comment. 35; *Boatman et ux.* v. *Las-
ley*, 23 Ohio St. 614.

Whether an easement in a given case is appurtenant or in gross
is to be determined mainly by the nature of the right and the in-
tention of the parties creating it.   *Kramer* v. *Knauff*, 12 Ill. App.
115, 118; *White* v. *Crawford*, 10 Mass. 183.   If it be in its
nature an appropriate and useful adjunct of the land conveyed,
having in view the intention of the grantee as to its use, and there
being nothing to show that the parties intended it to be a mere
personal right, it should be held to be an easement appurtenant to
the land, and not an easement in gross, the rule for the construc-
tion of such grants being more favorable to the former than to the
latter class.   Says Washburn on Easements, 45 : "Though an ease-
ment, like a right of way, may be created by grant in gross, as it
is called, or attached to the person of the grantee, this is never
presumed when it can fairly be construed to be appurtenant to
some other estate ; and if it is in gross, it cannot extend beyond
the life of the grantee.   Nor can it be granted over, being attached

to the person of the grantee alone." The same author says on p. 8 : " A man may have a way *in gross* over another's land, but it must, from its nature, be a personal right not assignable nor inheritable; nor can it be made so by any terms in the grant, any more than a collateral and dependent covenant can be made to run with the land." See, also, *Boatman et ux.* v. *Lasley, supra; Spenseley* v. *Valentine*, 34 Wisc. 154; Angell on Highways, § 1, and cases cited.

The cases of *White* v. *Crawford*, 10 Mass. 183, and *Senhouse* v. *Christian*, 1 Term Rep. 560, cited by the complainant, seem to be in conflict with this general statement concerning an easement in gross.

In the former case the court says: " As to ways in gross, that they may be granted, or may accrue in various forms to one and his heirs and assigns, there can be no doubt. There is a strong example of such a grant in the case of *Senhouse* v. *Christian*, upon which the defendants justified as heirs of the original grantee." See, also, *Lonsdale Co.* v. *Moies*, 21 Law Reporter, 658, 664.

Whether or not these cases can be reconciled with the general doctrine before stated, Mr. Washburn seems to think they can, Washburn on Easements, 12; but see to the contrary *Goodrich* v. *Burbank*, 12 Allen, 460; we think the greater weight of the authorities supports the doctrine announced, that easements in gross, properly so called, are not assignable or inheritable. If, however, a right to take soil, gravel, minerals, water from a spring, and the like, from another's land, may properly be denominated an easement, then it is proper to say that an easement in gross, for such it might doubtless be constituted, might be both assignable and inheritable. For the rights enumerated are " so far of the character of an estate or interest in the land itself that, if granted to one in gross, it is treated as an estate, and may, therefore, be one for life or inheritance." See *Tinicum Fishing Co.* v. *Carter*, 61 Pa. St. 21. In *Post* v. *Pearsall*, 22 Wend. 425, it is said of easements in gross, that " they are either personal, and confined to an individual for life merely, or are claimed in reference to an estate or interest of the claimant in other lands as the dominant tenement; for a *profit à prendre* in the lands of another, when not granted in favor of a dominant tenement, cannot properly be

said to be an easement, but an estate or interest in land itself."
In *Boatman et ux.* v. *Lasley, supra,* the court says : " A very
marked distinction also exists between a way in gross and an
easement of *profit à prendre,* such as the right to enter upon the
lands of another and remove gravel or other materials therefrom."

With the foregoing principles in mind, we come now to consider
the deed from Bailey and Smith to Cadwalader, together with the
location, condition, and circumstances connected with the land
conveyed, and also with that which remained in the grantors, upon
which the burden was imposed, in order to determine the question
first propounded, viz. : Whether the easement created was appur-
tenant or in gross. In its granting part, the deed grants to Cad-
walader the right to keep a bathing-car on the east half of Bailey's
Beach, with the right to use said beach for bathing. Near the end
of the deed are the covenants for the specific performance of which
the bill is brought. The grant and the covenant run to Cad-
walader, his heirs and assigns. It is noticeable, in examining the
deed, that it contains mutual covenants, a covenant in favor of the
grantors, and covenants in favor of the grantees. The former is as
follows : —

" And it is expressly understood between the parties to this
deed that this grantee shall keep twenty-five feet along the whole
westerly line of these granted premises fenced out for a road or
street forever."

This covenant was evidently intended as a benefit to the remain-
ing land of the grantors, this strip of land forming the eastern
boundary of their remaining land, and, together with a strip of
similar dimensions thrown out on the west side thereof by the
grantors as shown by the plat, constituting a street upon which
said remaining land abuts.

The covenants of the grantors were to the effect that no build-
ing, excepting bathing-cars, should ever be placed upon the marsh
or beach called Bailey's Beach; that no building should ever be
placed thereon to the westward of a certain specified line; that
none should be placed on a knoll overlooking said beach, and just
north of the lower end of Bellevue Street; that no one should go
upon the east half of said beach to get seaweed or sand during
certain hours of the day in the months of July, August, and Sep-

tember in each year; and that nothing should be done by their permission to obstruct the free use and enjoyment of said beach for bathing.

These covenants, in so far at any rate as they constitute a restriction against building upon the remaining land of the grantors, — and this is as far as we are called upon to consider them in this case, — we think were manifestly intended by the parties to be restrictions in favor of the estate granted; or, in other words, that said covenant against building created a negative easement appurtenant to the premises conveyed.

We cannot see that the parties in making this restriction could reasonably have had any other object in view than that of securing and preserving to the granted premises an unobstructed prospect or view of the beach and sea, a most desirable right in connection with summer residences in Newport.

Said restriction was well adapted to the accomplishment of that object. It was a useful and desirable object.

Between the granted premises and the sea was the land of the grantors, out of which this estate was carved, and there was nothing to obstruct the view of the beach, on which the grantee had stipulated for the right to place a bathing-car. It is apparent, from an inspection of the premises, that buildings placed upon that part of the land included in the restrictions mentioned, and particularly upon the "knoll," would, to a greater or less extent, obstruct the prospect seaward from the granted premises.

It was the possibility of such an obstruction, we think, which it was the intention of the parties to guard against.

Furthermore, we fail to see that this restriction could have been intended for the purpose of making the bathing rights granted by said deed "available and pleasant," as is contended by the complainant. For such buildings as might be constructed upon the restricted premises would not, so far as we are able to discover, in any way interfere with said bathing rights. Said "knoll" in particular is so situated that no building placed thereon could by any possibility obstruct or prejudice said right. Moreover, the building which has been erected by the respondents upon the restricted premises, a large and commodious bathing pavilion, does not in any manner whatever interfere with said bathing right.

The complainant is not the owner of any of the land conveyed by the respondent's ancestors in title to George Cadwalader in October, 1852, and has no interest in the execution of the covenant in suit. For, as already stated, said George Cadwalader conveyed the premises, to which the easement in question was appurtenant, to William W. Tucker in August, 1864, reserving to himself, his heirs and assigns, the covenants and stipulations contained in the deed from Bailey and Smith of 1852 against building on certain sites near the bathing beach, and the right of bathing on said beach. We think it not improbable that the purpose of said George Cadwalader in severing the easement from the estate was to prevent said Tucker and his successors in title from setting up the same against his, said Cadwalader's, right to build upon a lot of land which he purchased in October, 1852, which, as the record shows, was a part of the restricted premises, and upon which he subsequently built and occupied a house, which house the complainant is now occupying. But, however this may be, the easement, being a negative easement appurtenant to the land conveyed, was extinguished by operation of law upon being severed therefrom, and hence is no longer in existence.

The easement, being appurtenant to the land, cannot exist alone. It has no standing apart from the dominant estate to which it was attached.

Thus, as stated in Woolrych on Ways, 13, "a way appendant cannot be turned into a way in gross, because it is inseparably united to the manor or land to which it is incident." And, as stated in Washburn on Easements, 1st ed. 26, "though a man may acquire an easement in gross, like a right of way over another's land, separate and distinct from the ownership of any other estate to which it is appendant, yet if his right to such way result from his ownership of a parcel of land to which it is appendant, he cannot by grant separate the easement from the principal estate to which it is appendant, so as to turn it into a way in gross, in the hands of the grantee."

See, also, *Garrison* v. *Rudd*, 19 Ill. 558, 564, and cases cited; 3 Greenleaf's Cruise, 83; *Ackroyd* v. *Smith*, 10 C. B. 164; *Hall* v. *Lawrence*, 2 R. I. 218, 242. Furthermore, as stated in *Trustees* v. *Lynch*, 70 N. Y. 440, 26 American Reports, 615, 619, "a

negative easement by which the owner of lands is restricted in their use can only be created by covenant in favor of other lands not owned by the grantor and covenantor." See, also, *Hills* v. *Miller*, 3 Paige, 254.

But for the reservation in the deed from Cadwalader to Tucker, the easement created would doubtless have passed to the latter, whether the grant in terms had embraced it or not, and this would also be so whether such grant in terms embraced privileges and appurtenances or not. Washburn on Easements, 4th ed. p. 40, and cases cited.

It follows, then, that the complainant, never having owned the dominant estate described in the bill, has no standing in a court of equity to enforce rights which were appurtenant thereto. So far as the bathing rights are concerned, no question is made in this case concerning the right of enjoyment thereof by the complainant.

For the reasons above stated, we are of the opinion that the complainant has not made out a case which entitles him to relief. The bill must, therefore, be dismissed.

*Arnold Green*, for complainant.

*William P. Sheffield & Francis B. Peckham*, for respondents.