Bernard A. JACKVONY et al.

v.

Felecien PONCELET et al.

No. 89–177–Appeal.

Supreme Court of Rhode Island.

Jan. 3, 1991.

Anthony F. DeMarco, Boyer, Reynolds & DeMarco, Providence, for plaintiffs.

Thomas S. Hogan, Hogan & Hogan, East Providence, for defendants.

## OPINION

KELLEHER, Justice.

The subject of this dispute is a right-of-way that traverses several parcels of land located in the town of East Greenwich. The plaintiffs, Bernard and Sharon Jackvony, are before us on an appeal from a finding of a Superior Court justice in favor

of the defendants, Felecien and Ruth Poncelet. Hereafter we shall refer to the litigants by their last names.

The land now subject to this easement was once owned by G. Ellsworth Gale and his wife, Margaret. In 1946 the Gales conveyed a portion of their land to the Rocky Hill Country Day School, Inc. (Rocky Hill). The deed from the Gales to Rocky Hill created the right-of-way so that Rocky Hill could have access to the rear portion of its property from Howland Road. Otherwise, the rear portion of the parcel would have been inaccessible from Howland Road because of the location of the remainder of the Gales' property. The 1946 deed described the right-of-way as follows:

"Together with a right-of-way over the southerly cart path leading from the above described premises to Howland Road, which said path runs over other land of the grantor, to give access to the within described property for any and all uses and for the use of any and all grantees of this grantee; provided, however, that any alterations, improvements and maintenance of said right-of-way to make it adequate for said purpose shall be paid one-half by the grantor and one-half by the grantee."

In 1950 Rocky Hill sold the land it acquired from the Gales to Felecien Poncelet. The deed from Rocky Hill to Poncelet preserved Poncelet's rights in the right-of-way with the following language:

"Together with all the rights acquired by this Grantor from its Grantor concerning the right-of-way over the southerly cart path leading from the above described premises to Howland Road as set forth in the deed from G. Ellsworth Gale Jr. to Rocky Hill Country Day School, Inc. recorded in the records of land evidence in said Town of East Greenwich in Book No. 31 at Page 487."

Subsequent to the initial sale to Rocky Hill, the Gales further sub-divided and eventually sold the remainder of their land to various purchasers. Among those purchasers were the Jackvonys and the Correntes.[1]

The Jackvonys and Corrente live on adjoining parcels, lot Nos. 274 and 273, respectively (see appendix A). Pegwin Drive is a public highway. It divides the Jackvony and Corrente parcels, crosses the right-of-way, and extends to the easterly boundary of Poncelet's property. With the establishment of Pegwin Drive, Poncelet no longer needed to use the right-of-way to reach Howland Road. Nevertheless, Poncelet has continued to use both means of access.

The Corrente property is situated on the northerly side of Pegwin Drive while the Jackvony property abuts the southerly side of the drive. The Poncelet property runs along the westerly side of both the Jackvony and the Corrente properties. In mid-August 1980 Felecien Poncelet executed a document entitled "Release of Right of Way" in which Poncelet, in consideration of $10,000 paid by Corrente, purported to release to Corrente the portion of the right-of-way that crosses her land by the following language:

"WHEREAS, [Poncelet] and [Corrente] desire the cancellation and annulment of said right of way across, over and through [Corrente's] land:

"NOW, THEREFORE, in consideration of the sum of ten ($10) dollars paid by [Corrente] to [Poncelet], the receipt whereof is hereby acknowledged, [Poncelet] hereby releases, quit-claims, and abandons to [Corrente] the right of way granted to [Poncelet] across, over and through [Corrente's] land * * *."

Poncelet's wife, Ruth, also released to Corrente all her rights of dower in the right-of-way. At trial Felecien Poncelet testified that by executing a partial release in favor of Corrente, he did not intend to abandon his interest in the remainder of the right-of-way.

In their complaint the Jackvonys sought not only a declaration that the entire easement had been extinguished when Poncelet executed the partial release to Corrente but

---

**1.** Robert Corrente and his wife, Veronica, purchased their parcel in 1968. Subsequently Robert Corrente died. Therefore, "Corrente" shall hereafter refer to Veronica Corrente.

also an injunction prohibiting the Poncelets from using the right-of-way across their property. The Jackvonys also sought compensation for damages to their property allegedly caused by Poncelet.

The trial justice enjoined the Poncelets from interfering with or disrupting the Jackvonys' property while using the right-of-way to cross over their property and ordered the Poncelets to pay $1,100 to the Jackvonys for the damage to their landscaping and driveway that Poncelet had caused. The trial justice concluded, however, that the entire easement had not been extinguished by Poncelet's partial release to Corrente. It is this last determination by the trial justice upon which the Jackvonys base their appeal.

The sole issue now before us, which is apparently one of first impression in this jurisdiction, is whether a release of a portion of an appurtenant easement can be effectuated without extinguishing the remainder of the easement. The Jackvonys now assert "that an easement cannot be divided, sold, or released piecemeal by the owner of the dominant estate." Allowing the partial release of an appurtenant easement, in the Jackvonys' opinion, would be tantamount to allowing a separation of the appurtenant easement from the dominant tenement. The Jackvonys urge this court to give little or no weight to Poncelet's intent when he executed the release to Corrente.

Quite naturally, the Poncelets argue that a partial release of an appurtenant easement does not necessarily extinguish the remainder of the easement. Contrary to the Jackvonys' view, the Poncelets assert that Poncelet's intent in executing a release is relevant and should indeed be considered by this court. We are reminded in determining this issue that the findings of fact by the trial justice are entitled to great weight and will not be disturbed on appeal unless a party can show that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Sugarman v. Lewis,* 488 A.2d 709, 712 (R.I.1985).

Professor Powell, in his treatise on property, enumerates five means by which an easement can be terminated:

(1) by expiration;

(2) by act of the dominant owner (either release or abandonment);

(3) by act of the servient owner (prescription or conveyance to a bona fide purchaser without notice);

(4) by conduct of both parties (merger or estoppel) or,

(5) by eminent domain, mortgage, foreclosure, or tax sale. 3 R. Powell, *The Law of Real Property* ¶¶ 421–426 (1987).

Of these possible means of terminating an easement, we need only focus on release or abandonment by the dominant owner.

■■■ According to the Restatement of Property and contrary to the protestations of the Jackvonys, the effectiveness of a release, like that of an abandonment, depends upon a finding of intention. 5 Restatement

> *Property* § 504 comment b (1944). The Reinstatement goes on to say: "The intention required in each of the two cases has the essential difference, however, that in a release it is the intention to give up the easement for the benefit of the owner of the servient tenement, while in an abandonment it is merely the intention to give up the easement without reference to any resulting benefit to anyone else."

■■■ With respect to abandonment, it has long been settled under Rhode Island law that the question of abandonment of easement rights is one of intention that must be determined by the facts of each case. *Spangler v. Schaus,* 106 R.I. 795, 806, 264 A.2d 161, 167 (1970); *see also Nahabedian v. Jarcho,* 510 A.2d 425, 427 (R.I.1986). In order to establish abandonment of an easement, it is necessary to prove that the holder of the easement acted voluntarily and in such a decisive manner as to show an unequivocal intention to abandon the easement. *Steere v. Tiffany,* 13 R.I. 568, 571 (1882).

■ The "Release of Right of Way" executed by Poncelet in favor of Corrente purportedly "releases, quit-claims, and abandons" to Corrente all Poncelet's interest in the portion of the right-of-way crossing over her land. The use of the word "abandon" in the instrument serves only to cast a cloud over the true purpose of the document. As previously noted, according to the Restatement, a bilateral transaction through which an easement is extinguished by the concurrence of both the owner of the easement and the owner of the servient tenement is properly termed a "release," not an "abandonment." *See* 5 Restatement *Property* § 500 comment a.

■ Following negotiations between Poncelet and Corrente, Poncelet agreed to release to the latter, for $10,000 consideration, that portion of the easement that crossed over the southwesterly corner of Corrente's land. In making this release, Poncelet did not intend to "abandon" his interest in any portion of the easement. Poncelet only intended to release a small portion of his easement to and for the benefit of Corrente while retaining his interest in the remainder of the easement. Indeed, the trial justice found:

"[Poncelet] had no intention of giving up this right-of-way, and if he thought that in releasing this partial right-of-way to * * * Corrente it would in any way affect his right to the remaining portion, he wouldn't have done it. He stated that. That's clearly his intent."

More importantly the plain wording of the "Release of Right of Way" specifically limits the effectiveness of the release, although in a somewhat convoluted manner, to the portion of the easement that crosses over Corrente's land. Neither through the release nor through his testimony at trial did Poncelet manifest any intention of abandoning any remaining interest he may have in the easement.

■ Thus we come to the determinative issue in the case. Does the partial release of an appurtenant easement automatically extinguish the remainder of the easement by operation of law? To support their contention that an appurtenant easement can-

not be divided and released in part, the Jackvonys place great emphasis on *Cadwalader v. Bailey*, 17 R.I. 495, 23 A. 20 (1891). However, we believe that the Jackvonys' reliance on *Cadwalader* is misplaced. In that litigation George Cadwalader, the plaintiff's father and predecessor in title, had acquired a parcel of beach-front property by a deed in which his grantors agreed not to build structures on their land that would obstruct Cadwalader's seaward view, thereby creating a negative easement appurtenant. *Id.* at 496, 23 A. at 20. Cadwalader's grantors abided by the terms of the negative easement contained in the deed.

Several years later Cadwalader sold his property but, by language included in the deed, purported to retain his right in the negative easement for himself and his heirs. *Id.* at 496–97, 23 A. at 20–21. Approximately twenty-five years after that sale, George Cadwalader now being deceased, the plaintiff, Cadwalader's son, brought suit to enforce the negative easement to enjoin the defendants, the heirs of Cadwalader's grantors, from erecting buildings on their property. *Id.*

In addition to ruling that the plaintiff had no standing to sue because he had no interest in the dominant tenement, the court held that since the negative easement was appurtenant to the land conveyed by the father, it could not exist independently of the dominant estate, as Cadwalader had argued. Consequently the court ruled that the easement was extinguished by operation of law upon its complete severance from the dominant estate. *Id.* at 503, 23 A. at 23.

It is obvious that the rule set forth in *Cadwalader*, namely, that an appurtenant easement cannot exist apart from the dominant tenement and can be transferred only by transfer of the dominant property, is now the settled rule in Rhode Island and elsewhere. *See* J. Bruce & J. Ely, *The Law of Easements and Licenses in Land* ¶ 8.01[2] (1988); 3 R. Powell, *The Law of Real Property* ¶ 418 (1987); 3 H. Tiffany, *The Law of Real Property* § 761 (3d ed. 1939). However, the facts now before us

bear little resemblance to those found in *Cadwalader.* Whereas Cadwalader attempted to divest himself of the dominant estate and retain his interest in the negative easement that was appurtenant to it, the Poncelets have merely released a portion of their easement with the intention of retaining its remainder for their use. Unlike Cadwalader, the Poncelets remain in possession of both the dominant estate and the remainder of the appurtenant easement—no attempt was made to sever the easement from the dominant tenement and transfer it *in toto.* Thus the rule set forth in *Cadwalader* does little to assist us in resolving the issue presented to us in this dispute.

No case law exists in Rhode Island that directly addresses the precise issue now before us. Consequently we must look to the general law dealing with the extinguishment of easements and to any other jurisdictions that have ruled on the issue. A thorough examination of case law from other jurisdictions reveals, however, that the novelty of this issue is not unique to Rhode Island courts. Some litigation before courts in other jurisdictions has involved partial releases of easements. That litigation, however, did not focus primarily on the validity of the partial releases, nor did it seek to answer the question of whether an easement can be released in part without extinguishing its remainder. Rather, both the courts and the litigants in those disputes allowed the partial releases to stand without raising challenges regarding their validity. *See, e.g., Slocum v. Phillips Petroleum Co.,* 678 P.2d 716 (Okla.1983); *Mid–Continent Pipe Line Co. v. Emerson,* 377 P.2d 565 (Okla.1962). This may perhaps indicate that partial releases of appurtenant easements are generally recognized as valid and that consequently the question of their validity is infrequently litigated.

There is at least one case that supports the proposition that a release of only a portion of an easement does not necessarily extinguish the entire easement. *Dawson v. McKinnon,* 226 Iowa 756, 285 N.W. 258 (1939), has a rather extensive and complicated factual background, but we need only deal with certain aspects of those facts. There, Dawson, the appellant, purchased a parcel of land whose only means of access was a curved driveway with two exits, each on opposite ends of the drive. *Id.* at 760, 285 N.W. at 260. This driveway was an appurtenant easement that Dawson received with her property from her grantor. *Id.*

Approximately eight years after Dawson's purchase, a local school district purchased land adjoining Dawson's as a site for a junior high school. Upon request of the school district's representatives, Dawson agreed to deed a portion of her property to the school district in addition to releasing a portion of her easement. *Id.* at 762, 285 N.W. at 261. Following the partial release, because one of the two entrances to Dawson's property was located on the released portion of the easement, Dawson then had only one entrance to her property remaining on the portion of the easement that she retained. *Id.*

Years later a highway was built through the city. The construction proceeded over a large portion of the easement that Dawson had retained. *Id.* at 764, 285 N.W. at 262. The construction of this highway unfortunately impaired access to Dawson's property to the extent that its use and its value as a home were substantially diminished. *Id.* at 769, 285 N.W. at 264. Consequently Dawson was compelled to sell her property to the school district at a loss. Later she instituted suit against the highway commission to recover damages for her loss. *Id.*

The highway commission argued, as the Jackvonys do here, that Dawson parted with her rights in the entire easement when she earlier agreed to release a portion of the easement to the school district. *Id.* at 770, 285 N.W. at 265. However, the Iowa court ruled that Dawson "had a right to part with all or any portion of her easement. Releasing her rights in [a] particular portion of the drive cannot be held to have been a release of her rights in the remainder of the drive." *Id.* The court noted that Dawson needed the remainder of the easement to retain access to her

property, but the court's determination apparently did not rest upon this factor. The court also noted that in executing a partial release of her easement to the school district, Dawson had no intention of releasing her rights in the remainder of the easement. *Id.*

We find the court's reasoning in *Dawson* to be persuasive. The Poncelets executed a valid partial release of their easement with respect to Corrente. The plain language of the release clearly manifested an intention on the part of the Poncelets to extinguish completely their right to use only that portion of the easement that traversed Corrente's servient estate but to continue to enjoy the use of the remainder of the easement crossing over the Jackvonys' servient estate and beyond. Poncelet, like Dawson, at no time expressed any intention, either through the written release or through testimony at trial, to release his interest in the remainder of the easement. Furthermore, the Poncelets' alternate use of Pegwin Drive in no way affects their interest in the remainder of the easement. Indeed, a right-of-way by express grant is not extinguished by mere nonuse, and the fact that the easement holder finds a more convenient alternative route does not deprive the easement holder of the easement that remains for the holder's use and enjoyment whenever the holder has occasion to use the right. *Tichman v. Straffin,* 54 R.I. 356, 357, 173 A. 78, 78 (1934). Accordingly we are of the opinion that Poncelet's partial release to Corrente operated as a final and complete extinguishment of Poncelet's interest in that portion of the easement traversing Corrente's property, but Poncelet's interest in the remainder of the easement remains unaffected.

In light of the foregoing reasons, we hold that when the owner of a dominant estate executes a written release of an easement appurtenant to it that on its face purports to release only a portion of the easement to a servient estate owner while retaining the dominant estate owner's interest in the remainder, the release may be considered valid and the remainder of the easement is not automatically extinguished by operation of law.

Consequently the Jackvonys' appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.

APPENDIX A