

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| BRUCE TETRAULT, ET AL, | ) | No. ED101254 |
| | ) | |
| Plaintiffs/Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the St. Louis County |
| vs. | ) | |
| | ) | Honorable Patrick Clifford |
| RONALD YANKOWSKI, ET AL., | ) | |
| | ) | Filed: January 27, 2015 |
| Defendants/Respondent. | ) | |

## I. INTRODUCTION

Plaintiffs Bruce and Cheryl Tetrault appeal the judgment of the Circuit Court of St. Louis County in favor of defendants Antoinette Friesen and Ronald and Connie Yankowski. On appeal, the Tetraults argue that the trial court erred by determining that their right to an easement road through the Friesen and Yankowski properties was extinguished by abandonment and adverse possession. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## II. FACTS

The instant action involves three contiguous properties located in Wildwood, Missouri, 63201. The first property, 1298 St. Paul Road, belongs to the Tetraults. The second property, 1318 St. Paul Road, belongs to the Yankowskis. The third property, 1284 St. Paul Road, belongs to Friesen. The "easement road" at issue here begins at St. Paul Road on the Friesen property,



Friesen

Easement Road
("old dirt road")

Lower Road

St. Paul Road

Yankowski
(Previous owner: Ross)

Tetrault
(Previous owners: Burkey, Gerstung
Previous tenant: Jaycox)

Tetrault Road

All three properties orginally owned by Niere.

runs south across the Yankowski property, and ends on the Tetrault property. The relevant history of the properties, as well as the easement road, is as follows.

The three parcels were originally a single tract owned by the Nieres. An old dirt road referenced in the Nieres' 1949 general warranty deed was used to access the tract from St. Paul Road. The road began at St. Paul Road in the northwestern portion of the tract and ended in the southern portion of the tract.

In 1970, the Nieres subdivided the original tract into three separate plots, which are now known as the Friesen, Yankowski, and Tetrault properties. In doing so, they created an easement across the Friesen and Yankowski properties so that the Yankowski and Tetrault properties could use the old dirt road to access St. Paul Road. The dirt road then came to be known as the "easement road."

Since the original tract was subdivided, the Friesen property has had no owner other than Friesen. However, the two remaining properties changed hands several times over the years.

The first owners of what is now the Yankowski property were the Rosses. In 1974, the Rosses constructed a new road to access their property. Pursuant to an easement granted by Friesen, the road begins at St. Paul Road on the Friesen property and ends on the Yankowski property. This road is now known as the "lower road." In 1975, the Rosses sold the property to the Yankowskis, and the Yankowskis have occupied it ever since.

The Nieres originally retained ownership of the Tetrault property, and leased it to the Jaycoxes. In 1980, the Gerstungs purchased the property from the Nieres. The Gerstungs never lived there, however, and sold the property to Burkey in 1997. Burkey purchased the property with the intent to develop luxury homes. To provide access to the planned homes, Burkey built a third road running directly from St. Paul Road to the Tetrault property. This road is now known as the "Tetrault road." In 2010, however, Burkey lost the property to foreclosure and the planned development was never completed. Thereafter, the Tetraults purchased the property. The Tetraults' home is accessible from St. Paul Road by way of the Tetrault Road, as well as by traveling a combination of the lower road and easement road.

In July 2011, the Tetraults filed the instant lawsuit seeking a declaration that they have a permanent right of access to the easement road, and to prevent Friesen and the Yankowskis from interfering with the Tetraults' use thereof. After a bench-trial, the trial court granted judgment in favor of the defendants. The court concluded that the easement had been abandoned by the previous owners of the Tetrault property and extinguished by adverse possession. This appeal follows.

### III. STANDARD OF REVIEW

In a bench-tried case, we review the trial court's judgment under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *See Opponents of Prison Site, Inc. v.*

3

*Carnahan*, 994 S.W.2d 573, 577 (Mo. App. W.D. 1999); *Blue Pool Farms, L.L.C. v. Basler*, 239 S.W.3d 687, 690 (Mo. App. E.D. 2007). We will "sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Blue Pool Farms*, 239 S.W.3d at 690. "We view the evidence and permissible inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Board of Educ. v. State*, 229 S.W.3d 157, 161 (Mo. App. E.D. 2007). We review questions of law de novo. *Blue Pool Farms*, 239 S.W.3d at 690.

## IV. DISCUSSION

In their first point on appeal, the Tetraults argue that the trial court erred by determining that their right to the easement road was extinguished, because the previous owners of their property abandoned it. Specifically, they argue that there was no evidence of any act by Burkey or the Gerstungs that showed clear intent to abandon the easement. In response, Friesen and the Yankowskis argue that there was in fact clear and convincing evidence of intent to abandon the easement.[1] They assert that in the 1980s the Gerstungs prepared a legal document proposing to abandon the easement road if Friesen and the Yankowskis would allow them to use the lower road. They also assert that Burkey's construction of the Tetrault road demonstrates he did not wish to use the easement road. Finally, they point to the trial court's finding that Burkey submitted building plans to the city of Wildwood which showed the Tetrault road, but failed to reference the easement road.[2]

---

[1] In addition, we note that Friesen and the Yankowskis claim the Tetraults' appeal should be dismissed for noncompliance with Rule 84.04(d). We find that the Tetraults' points relied on are substantially compliant with Rule 84.04(d), because they identify the challenged ruling of the trial court, state concisely the legal reason for reversible error, and explain why that legal reason is applicable to the instant case. *See id.* Therefore, we proceed with our review.

[2] Consistent with the trial court's judgment, Friesen and the Yankowskis also claim that the Rosses' construction of the lower road is further evidence of abandonment of the easement road. They fail to recognize,

4

As the easement at issue here was established in the Tetrault property when it was created, Friesen and the Yankowskis have the burden to prove by clear and convincing evidence that the Tetraults or their predecessors in title abandoned the easement. *Creech v. Noyes*, 87 S.W.3d 880, 884 (Mo. App. E.D. 2002); *see also Franck Bros. v. Rose*, 301 S.W.2d 806, 813 (Mo. 1957). "An easement is considered abandoned when there is a history of nonuse coupled with an act or omission showing a clear intent to abandon." *Id.* at 885 (quoting 25 Am. Jur. 2d *Easements and Licenses* § 112 (2d ed. 1996)).

"Mere nonuse[] of an easement, however long continued, does not of itself constitute abandonment." *Id.* at 884. "The reason mere nonuse[] will not destroy an easement is that it is a property right and thus it is not necessary that the owner make use of it to keep h[er] right." *Id.* (quoting George W. Thompson, *Thompson on Real Property* § 443, at 735 (1980)). "[O]nce an easement is established or acquired, it is not abandoned or destroyed by mere nonuse[] or by the use of another means of ingress and egress." *Id.* at 885 (quoting *Sanderson v. Less*, 296 S.W.2d 81, 84 (Mo. 1956)). "The fact that the easement-holder finds a more convenient alternative route does not deprive the easement-holder of the easement that remains for the holder's use and enjoyment whenever the holder has occasion to use the right." *Id.* (quoting *Jackvony v. Poncelet*, 584 A.2d 1112, 1117 (R.I. 1991)).

Further, "to prove . . . abandonment, there must be 'evidence of an intention to abandon as well as of the act by which that intention is put into effect; there must be a relinquishment of possession with intent to terminate the easement.'" *Id.* (quoting *Dalton v. Johnson*, 320 S.W.2d 569, 574 (Mo. 1959)). "The acts claimed to constitute the abandonment must be of a character so

---

however, that the abandonment inquiry here focuses solely on the current and former owners of the *Tetrault* property. *See* 28A C.J.S. *Easements* § 148 (2014) ("A claim of abandonment . . . focuses upon the intention and acts of the easement owner rather than the party claiming extinguishment."). Neither Friesen, the Rosses, nor the Yankowskis can abandon easement rights vested in a property they never owned.

decisive and conclusive as to indicate a clear intent to abandon the easement." *Id.* (quoting 25 Am. Jur. 2d *Easements and Licenses* § 112 (2d ed.1996)). "Acts evidencing an intention to abandon must clearly demonstrate the permanent relinquishment of all rights to the easement." *Id.* (quoting 28A C.J.S. *Easements* § 124 (1996)).

Here, the trial court's determination that the Tetraults' right to the easement road was extinguished by abandonment is not supported by substantial evidence. There is no evidence in the record of an act by the current or former owners of the Tetrault property that was "so decisive and conclusive as to indicate a clear intent to [permanently] abandon the easement." *Id.* (quoting 25 Am. Jur. 2d *Easements and Licenses* § 112).

First, the fact that the Gerstungs prepared a document offering to abandon their right to the easement road, if Friesen and the Yankowskis would allow them to use the lower road, is insufficient to establish a clear intent to abandon, because the record shows that Friesen and the Yankowskis in fact rejected the Gerstungs' offer. Friesen and the Yankowskis never granted the Gerstungs access to the lower road, so the Gerstungs never relinquished their right to the easement road. At most, the document shows that the Gerstungs would have abandoned the easement *only if Friesen and the Yankowskis met their terms*, not that they unconditionally intended to do so.

Second, Burkey's construction and use of the Tetrault road to access St. Paul Road is insufficient to establish a clear intent to abandon the easement road. As we have explained, an easement-holder does not abandon her easement by using a different, more convenient method of accessing her property. *Id.* Rather, an easement "is a property right and thus it is not necessary that the owner make use of it to keep h[er] right." *Id.* at 884 (quoting George W. Thompson, *Thompson on Real Property* § 443, at 735 (1980)). The easement right "remains for the holder's

6

use and enjoyment whenever the holder has occasion to use [it]." *Id.* at 885 (quoting *Jackvony*, 584 A.2d at 1117).

Finally, even if Burkey submitted building plans to the city of Wildwood that failed to reference the easement road, this act is not "so decisive and conclusive as to indicate a clear intent to [permanently] abandon the easement." *Id.* (quoting 25 Am. Jur. 2d *Easements and Licenses* § 112). The purpose of these building plans was to gain approval from the city for new improvements upon the Tetrault property, not to alter or extinguish the right of the Tetrault property's owner to use two adjacent properties for access from St. Paul Road. In fact, the trial court found that construction vehicles hired by Burkey used a portion of the easement road in order to build the very improvements his plans had set forth.

Thus, the trial court's determination that the prior owners of the Tetrault property abandoned their right to the easement road is unsupported by substantial evidence. The record contains no evidence of a decisive, unequivocal act showing clear intent to abandon the easement.

In their second point, the Tetraults argue that the trial court erred by determining that their right to the easement road was extinguished by adverse possession. They contend, inter alia, that Friesen and the Yankowskis failed to establish that their use was hostile and under claim of right, because it was not incompatible with the Tetrault's right as an easement-holder. In response, Friesen and the Yankowskis argue that they established adverse possession, because the trial court found that no one has used the easement road for access to the Tetrault property since the early 1980s and it is overgrown and impassable.[3]

---

[3] The trial court also concluded that a garage and two large trees on the Friesen property obstruct the easement road. However, the trial court also found that these objects predate the easement. We fail to see how objects that predate an easement created and used specifically to access the Tetrault property could be adverse to the owner of that property's right to such access.

"To establish title to a tract of land by adverse possession, a claimant must prove that h[er] possession of the land was: (1) actual; (2) hostile and under claim of right; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years." *Creech*, 87 S.W.3d at 885. "The burden is on the party claiming adverse possession to prove each element by a preponderance of the evidence." *Id.* at 885-86; *cf.* 28A C.J.S. *Easements* § 154 (2014) ("[I]f the dominant estate owner abstains from the use of the easement, the servient owner has an enlarged scope of privileged action, and it may be more difficult for the servient owner to establish the adverse character of behavior."); 25 Am. Jur. 2d *Easements and Licenses* § 89 (2014) ("[T]he burden on the servient estate owner to prove unreasonable interference with an unused easement is high."). "A claimant's failure to establish any one of the elements [of adverse possession] will necessarily defeat the claim . . . ." *Id.* at 886.

The element of "'[h]ostile and under claim of right' means that the possession must be opposed and antagonistic to the claims of all others, and the claimant must occupy the land with an intent to possess it as his or her own." *Id.* (quoting *Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo. App. E.D. 1998)). "[T]o extinguish an easement by adverse possession, a landowner's use must be incompatible with the easement-holder's right of use." *Baker v. Walnut Bowls, Inc.*, 423 S.W.3d 293, 299 (Mo. App. S.D. 2014) (quoting *Peasel v. Dunakey*, 279 S.W.3d 543, 546 (Mo. App. E.D. 2009)).

Here, Friesen and the Yankowskis' use of the easement was not hostile and under claim of right, because it was not incompatible with the right of use possessed by the owners of the Tetrault property. The trial court's finding that the easement road was simply allowed to become overgrown shows that Friesen and the Yankowskis neglected to make use of the easement at all. It was not until 2011, when a trailer was placed across the road, that either Friesen or the

Yankowskis took any affirmative step to use the easement in a way that was incompatible with the Tetrault property's right of use. Therefore, the trial court erroneously applied the law in concluding that Friesen and the Yankowskis' use of the easement was hostile and under claim of right for the requisite ten year period, and the Tetraults' easement was not extinguished by adverse possession.

## V. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

_____
Lisa S. Van Amburg, Judge

Lawrence E. Mooney, P.J. and
Clifford H. Ahrens, J., concur.