CALVIN S. DAVIS, et al., *vs.* MARY A. BRIGGS, et al.

Piscataquis. Opinion December 19, 1918.

*Water rights. Easements. How easements may be created. Easements by estoppel. Doctrine of equitable estoppel. Easements in gross or appurtenant with the land. How the same are to be determined.*

In 1894 Judson Briggs, who was husband of one of the defendants and father of the other defendant, owned a spring from which a water-pipe had been laid for a short distance toward land owned by Joseph W. Davis, who was the father of the plaintiffs. Davis owned property at some distance from the spring. Upon the north of the Davis property were three tenements and a stable owned by Briggs, and on the south of the Davis property was the homestead of Briggs. Davis desired the use of the spring water for domestic purposes. In the spring or summer of 1894, Davis and Briggs entered into a contract whereby Briggs was to extend the water-pipe to a point in the public highway easterly of the Davis property, Davis was to extend the pipe across intervening land to his own property, allow Briggs to connect with the extended pipe by means of two tees, one to his tenements and stable on the north and the other to his homestead on the south, and in addition thereto Davis was to pay Briggs the sum of fifty dollars in cash. So far as the contract required action on the part of Davis it was completed. The pipes were laid, the cash was paid, the tees were adjusted, and connection was made by Briggs to the pipe which Davis extended. There was no limit of time during which Davis was to have the benefit of the water. During the balance of the life of Briggs, a period of about twelve years, and for the further period of about five years after his death, Davis and his heirs enjoyed the use of the water, until the defendant severed the pipe because the heirs of Davis, who are these plaintiffs, would not pay water rate.

*Held:*

1. That by virtue of the contract, long continued, long acquiesced in and long enjoyed by the parties, an easement was created by equitable estoppel.

2. Under the circumstances of this case this was an easement appurtenant to the Davis land and not an easement in gross.

3. As such easement appurtenant to the land of Davis it runs with the land.

Bill in equity asking that defendants be restrained from cutting off supply of water running to the plaintiff's property. Cause was heard upon bill, answer and proof, and by agreement of parties case was reported to Law Court. Judgment in accordance with opinion.

Case stated in opinion.

*Hudson & Hudson,* for plaintiffs.

*Charles W. Hayes, and W. E. Parsons,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

PHILBROOK, J. Bill in equity. The docket entries in the court below, made part of the record, show that the sitting Justice made a finding sustaining the bill, from which appeal was taken, but upon a later date, by agreement of parties, the same Justice signed an order to report the case to this court, which tribunal is to determine the cause "according to the equitable rights of the parties."

Comparatively few issues of fact exist. From a careful consideration of all the evidence we think the following statement of the case is correct.

The plaintiffs are respectively son and daughter of Joseph W. Davis, who died in 1904. The defendants are respectively widow and daughter of Judson Briggs, who died testate in 1906. By the terms of the latter's will all his estate was devised to these defendants. Since the beginning of these proceedings Mrs. Briggs has died and Mrs. Henderson, her daughter and co-defendant, and executrix of her will, defends individually and as such executrix.

On May 1, 1894, Joseph W. Davis, owned a double tenement house situated on the easterly side of Briggs Street in the Village of Brownville, while at the same time Judson Briggs owned a homestead on land adjoining the Davis property on the south, and also a stable and three tenement houses on land adjoining the Davis property on the north. Briggs Street runs in a northerly and southerly direction. Parallel to and easterly from Briggs Street, and between one hundred and fifty and two hundred feet distant therefrom, is Church Street. Between the easterly line of the Davis land and the westerly line of Church Street is land known as the Dunning land. From the latter land, passing some distance northerly along Church Street, we come

to the Highland Quarry Road, leading toward the east, and at a point some distance east of Church Street and north of the Quarry Road is to be found a spring, which was owned by Judson Briggs, in 1894, and since his death has been owned by the defendants.

In the year 1894 Judson Briggs and Joseph W. Davis entered into an agreement substantially upon these terms; Briggs was to complete a partly constructed water-pipe from the spring to the Dunning land, while Davis was to lay a connecting pipe from Church Street, across the Dunning land, across his own land to his own house, permit Briggs to tap the connecting pipe with a tee to his homestead on the south of, and his stable and tenement houses on the north of the Davis house. Davis was also to pay Briggs the sum of fifty dollars. When all this was done Davis was to have water from the spring without any limit of time thereto being agreed upon. The water-pipes were laid, the connecting tees attached and used by Briggs, the fifty dollars paid, and from that time, during the remainder of the life of Judson Briggs, a period of about twelve years, and for the further period of about five years after his death, Davis and his heirs, these plaintiffs, received water from these pipes without charge or demand of payment for any water thus received. On the twenty-second of August, 1911, Mrs. Henderson notified the plaintiffs that the water would be cut off unless arrangements were made by August twenty-eighth, and thereafter the pipe was cut by Mrs. Henderson and the supply ceased. The plaintiffs ask this court to order the defendant to re-connect the severed pipe and to thereafter refrain from any act which would prevent the enjoyment of this water supply.

What are the "equitable rights of the parties" which we are to determine. The plaintiffs claim an easement. This the defendants deny.

An easement is defined to be a right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a specific purpose, not inconsistent with a general property in the owner, a right which one proprietor has to some profit, benefit, or beneficial use, out of, in, or over the estate of another proprietor, 2 Washburn on Real Property, 25; *Pomeroy* v. *Mills*, 3 Vt., 279. Our own court, in *Bonney* v. *Greenwood*, 96 Maine, 335, said that an easement may be concisely defined as a privilege without profit which one has, for the benefit of his land, in the land of another. But as to the

manner of creating an easement, it was declared in *Brown* v. *Dickey*, 106 Maine, 97, that the same was by (1) express or implied grant, (2) reservation or exception in the deed of conveyance, (3) prescription, (4) statutory proceedings, (5) estoppel. In the case at bar there is no express grant, no reservation or exception, no prescription, and no statutory proceeding upon which the plaintiffs may rely. May they find support for their claims by an implied grant or by estoppel. In *Watson* v. *French*, 112 Maine, 371, the court declared the rule to be firmly established in this State that there can be no implied grant unless the easement be one of strict necessity, mere convenience, however great, being insufficient. Nothing in the agreement between Davis and Briggs, heretofore recited, can be construed as an implied grant under the circumstances of this case. Was an easement created by estoppel. Equitable estoppel has its foundation in the immutable principles of natural justice; *Shurtleff* v. *Wiscasset*, 74 Maine, 130. The doctrine of equitable estoppel is founded upon the principles of equity and justice, and is applied so as to conclude a party, who by his acts and admissions intended to influence the conduct of another, when, in good conscience and honest dealings, he ought not to be permitted to gainsay them; *Rogers* v. *P. and B. Street Railway*, 100 Maine, 86; *Horton* v. *Wright*, 113 Maine, 439.

In *Shurtleff* v. *Wiscasset*, supra, we find our court, in no uncertain terms, declaring that an estoppel may grow out of a long continued acquiescence in or enjoyment of the fruits of a contract. In the case at bar a contract was made by Davis and Briggs. The contract, so far as Davis was concerned, was fully completed according to all its terms. The convenience, the benefits, the fruits of that contract were enjoyed and acquiesced in by Briggs during all the rest of his life, and for about five years thereafter by these defendants. The pipe laid by Davis afforded a conduit for the water to the homestead, tenements and stable of Briggs. The money paid by Davis to Briggs, in part at least, defrayed the expense incurred by the latter in extending the pipe from its prior terminus to the Dunning land. Briggs and his successors in title having thus, and for so long a time, enjoyed and acquiesced in the fruits of that contract, we have no hesitation in declaring, under the rules already referred to, that by equitable estoppel an easement was created in favor of Davis, a right to have the Davis pipe connected with the pipe laid by Briggs, and to have a flow of water through it uninterrupted by any act of the defendants.

Is this an easement in gross which, because of its personal nature, by the weight of authority, is not assignable or inheritable, Washburn on Easements, 4th Ed., page 11, 9 R. C. L., 739, and cases there cited; or is it an easement appurtenant, which runs with the land, Washburn on Easements, 4th Ed., page 40.   In *Cadwalader* v. *Bailey*, 17 R. I., 495; .23 Atl., 20; 14 L. R. A., 330, an opinion amply fortified by citations, it is said, "Whether an easement in a given case is appurtenant or in gross, is to be determined mainly by the nature of the right and the intention of the parties creating it.   If it be in its nature an appropriate and usual adjunct of the land conveyed, having in view the intention of the grantee as to its use, and there being nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant to the land, and not an easement in gross, the rule for the construction of such grants being more favorable to the former than to the latter class.   Though an easement, like a right of way, may be created by 'grant in gross,' as it is called, or attached to the person of the grantee, this is never presumed when it can fairly be construed to be appurtenant to some other estate, and if it is in gross it cannot extend beyond the life of the grantee, nor can it be granted over, being attached to the person of the grantee alone. The greater weight of authority supports the doctrine that easements in gross, properly so called, are not assignable or inheritable.   If, however, a right to take soil, gravel, water from a spring, and the like, from another's land may properly be denominated an easement, then it is proper to say that an easement in gross,—for such it might doubtless be constituted—might be both assignable and inheritable, for the rights enumerated are so far of the character of an estate or interest in the land itself, that if granted to one in gross it is treated as an estate, and may therefore be one for life or of inheritance."

In more concise language it was said in *Lidgerling* v. *Zignego*, 77 Minn., 421, 80 N. W., 360, 77 Am. St. Rep., 677, that "an easement is appurtenant, and not in gross, when it appears that it was granted for the benefit of the grantee's land."

Without reiterating the facts as they appear in the record, the gist of which has been already stated, the court is clearly of opinion that the easement created is an easement appurtenant, running with the land, and hence enjoyable by the plaintiffs who are heirs of Joseph W. Davis.

The record discloses that the defendants, in addition to the tenements owned by themselves, supplied six or eight other tenements, and in argument they claimed that their system of supply constituted a public utility but we cannot accede to this claim.

It is therefore the opinion of the court that the defendants should forthwith, without expense to the plaintiffs, reconnect the severed pipe and thereafter refrain from interfering with or interrupting the natural flow of water from the spring through this connected pipe. The mandate will be, bill sustained; with costs.

Case remanded to the court below for the preparation and execution of a decree in accordance with this opinion.