**Duane A. REED, an infant, by his next friend, Philip Reed, and Philip Reed, Individually**

v.

**A. C. McLOON & COMPANY.**

Supreme Judicial Court of Maine.

Nov. 9, 1973.

Hart & Stinson, by Ronald A. Hart, Roger R. Therriault, Bath, for plaintiff.

Mahoney, Desmond, Robinson & Mahoney, by Robert F. Hanson, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEATHERBEE, Justice.

This is an action instituted by the minor Plaintiff against the Defendant company, seeking to recover for personal injuries suffered by the Plaintiff in a fall from a fuel tank owned by the Defendant. His father, Philip Reed, also seeks consequential damages. At trial before a jury, the Superior Court Justice directed a verdict for the Defendant at the close of the Plaintiffs' evidence, and from that ruling the Plaintiffs appeal under M.R.C.P., Rule 73(b).

Although there is only a suggestion of trespass to land in the Plaintiffs' complaint for negligence, the pre-trial memorandum and evidence at trial demonstrate that the case was based on both negligence and trespass. In granting the motion for a directed verdict, the trial Justice ruled as a matter of law that Defendant was not a trespasser and held that the evidence did not demonstrate actionable negligence of the Defendant, thereby foreclosing jury consideration of these two issues. The Plaintiffs' case is best comprehended by examining the relevant facts.

The minor Plaintiff, his parents, and several brothers and sisters resided for the summer in a home on Criehaven Island off the central Maine coast. The Plaintiff father had purchased this property in 1962 from Roscoe Fletcher, who in turn had bought the realty from the Defendant company in 1952. The realty consisted of approximately nine acres on the end of the island, and on it were some dwellings, a wharf, fuel pumps and lines and several fuel storage tanks.

The Plaintiff father's ownership of the above is subject to an exception in favor of the Defendant found in the father's

1962 warranty deed[1] from Roscoe Fletcher. This exception had also been incorporated into the deed[2] from the Defendant to Mr. Fletcher ten years before. The exception language follows:

"Excepting and reserving from the entire premises above described the right of A. C. McLoon & Co. to use the wharf adjacent to above described premises and to keep and maintain a lobster car moored thereto, together with the right to erect and maintain and remove a gasoline storage tank on the above described premises or wharf adjacent and the right to sell gasoline therefrom and to use the wharf therefor and to lay and maintain all the necessary piping and to do any and all things necessary to fulfill all the foregoing purposes, as set forth in deed of A. C. McLoon & Co., to Roscoe L. Fletcher. . . ."

The Defendant company is mainly a supplier of bottled gas, fuel oil and gasoline. For this purpose, the Defendant maintained the above described tanks, pumps and lines on the Plaintiff father's land. In fact, until 1965, the Plaintiff father worked for the Defendant in the fuel business but stopped when it became unprofitable for him. While so employed, the father sold petroleum products from these tanks, and the Defendant repaired and maintained the equipment itself. After 1965, neither the Defendant nor the father ever made use of any of the equipment still located on the Plaintiff father's property.

The minor Plaintiff's injuries were received when he fell from a fuel tank situated approximately thirty-five feet from the house. This tank had been used to store kerosene until 1965 and had continued to sit idle since then. It was a 2000 gallon model about six feet high and was located just outside the dwelling area fenced in by the Plaintiff father. The Plaintiff, then about four years old, climbed over the fence, then on the tank and began to swing from a pole extending upward from the tank. He lost his balance and fell, hitting his head on an earthen crock located on the ground. Ownership of the crock is in dispute.[3] The Plaintiff shattered the crock and received severe lacerations of the face. He was rushed by boat in apparently semiconscious condition to a mainland hospital, where stitches closed the wounds. A picture submitted by the Plaintiff shows that the wounds have left scars extending across the nose and cheek toward the left ear lobe.

■ Since the trial Justice granted the Defendant's motion for a directed verdict, on appeal we consider the evidence presented most favorably in support of the Plaintiffs' positions. While so doing, we seek to determine if there is sufficient evidence from which a jury, while taking account of every justifiable inference, could reasonably find for the Plaintiffs in this case. *E. g.,* Isaacson v. Husson College, Me., 297 A.2d 98, 101 (1972); Boetsch v. The Rockland Jaycees, Me., 288 A.2d 102, 103–104 (1972).

We sustain the Plaintiffs' appeals and remand the case to the Superior Court for a new trial.[4] Because we find that the jury should have been allowed to pass on the trespass issue, we do not reach the question of negligence.

---

1. Book 403, page 126, Knox County Registry of Deeds.

2. Book 327, page 334, Knox County Registry of Deeds.

3. The Plaintiffs assert that the crock had been on the premises since Mr. Reed bought the property and that it was used by Defendant in disposing of residue of oil and water which had collected in the tank. The Defendant's president, Mr. McLoon, states that the company did not own or use a crock and did not transport such a device to the island.

4. Although the trial here took place prior to our recent suggestion concerning the directing of verdicts in Moore v. Fenton, Me., 289 A.2d 698 (1972), we again emphasize that statement found in 289 A.2d at 700 n. 1. Verdicts should be directed sparingly and only if the Justice has no reasonable doubts about the correctness of his action. Remands for new trials, as here, could thus be minimized.

The Justice's granting of the Defendant's motion for directed verdict was foreshadowed by his earlier rulings during the trial which, in effect, precluded the Plaintiffs' reliance on trespass. The Justice construed the exceptions in the deed to Plaintiff father which permitted Defendant to maintain "a gasoline storage tank" on the property, "to sell gasoline therefrom", and "to do any and all things necessary to fulfill the foregoing purposes" to authorize the Defendant to maintain the *kerosene* storage tank (along with *several* gasoline storage tanks not directly involved in this action). He found this language to be unambiguous and excluded any extrinsic evidence bearing on the parties' intentions concerning the kerosene tank, effectively removing the trespass issue from the case. The Justice, deciding that the deed allowed the Defendant to carry on "the oil business" on the entire premises, ruled that the Defendant had not violated any of the terms of the exception grant. Thus, according to the Justice, the Defendant had a lawful right under this exception to keep the kerosene storage tank on the Plaintiff's land. Consequently, the Defendant could not be a trespasser and could not be liable to the Plaintiff on any theory of trespass to land.[5]

■ We have often stated that construction of a deed is a matter of law for the Court. *E. g.,* Susi v. Davis, 133 Me. 354, 177 A. 610 (1935). Of course, in construing deeds we hope to determine the intentions of the parties to the deed as expressed in the instrument. Hinds v. Hinds, 126 Me. 521, 140 A. 189 (1928). We agree with the lower court that the deed "speaks for itself" and does not require extrinsic evidence to shed light on any ambiguity in wording. However, we respectfully disagree with the Justice's conclusion as to the deed's meaning.

■ The clause quoted above which describes the exception and reservation in favor of the Defendant is clear on its face. The clause excepts and reserves to the Defendant from the entire premises the following rights:

1) to use the wharf;

2) to keep and maintain a lobster car moored to the wharf;

3) to erect, maintain, and remove *a gasoline storage tank* on the premises or wharf;

4) to sell gasoline from the premises or wharf;

5) to lay and maintain all necessary piping;

6) to do any and all things necessary to fulfill all the foregoing purposes.

These excepted rights are specific, except for the last. The explicit language of the deed gave the Defendant a right to maintain a single gasoline storage tank on the property. (Defendant did maintain not one but several such gasoline tanks.) The deed gave the Defendant no right to maintain a kerosene storage tank there. The final one (6) is general but refers explicitly to the previously enumerated rights, (1) through (5). Thus, guided by the familiar principle of *ejusdem generis,* we must interpret it in light of those rights preceding it. *Cf.* State v. Ferris, Me., 284 A.2d 288, 290 (1971).

■ Both parties have asserted that the clause above created an easement[6] in gross in the Defendant's favor, and we

---

5. The Justice also felt that the minor Plaintiff was a licensee to whom the Defendant had only a duty not to injure by wanton, willful or reckless acts of negligence. He ruled that there was no jury issue as to negligence and directed a verdict for the Defendant on the negligence issue as well. We do not reach this aspect of the Justice's decision as the

new trial which we will order will permit both issues to be presented anew.

6. Creation of an easement by reservation or exception, the manner used in this case, has long been sanctioned by this Court. *See* Brown v. Dickey, 106 Me. 97, 75 A. 382 (1909).

agree. An easement in gross may generally be described as an interest in land which "is not appurtenant to any estate in land or not belonging to any person by virtue of his ownership of an estate in other land, but is a mere personal interest in or right to use the land of another . . ." Shingleton v. State, 260 N.C. 451, 454, 133 S.E.2d 183, 185 (1963). The rights retained by the Defendant are personal to the company to enable it to carry on certain specified aspects of its previously existing business. There is no benefit created in favor of the land itself, and thus the easement is not appurtenant. *See* Davis v. Briggs, 117 Me. 536, 105 A. 128 (1918). Neither is the Defendant's right merely a license, which is a revocable personal privilege to do an act or acts in relation to another's land.[7] The reservation in the case at hand confers more than a revocable, temporary right to act. *See* DeHaro v. United States, 72 U.S. (5 Wall.) 599, 18 L.Ed. 681 (1866); Resnick v. City of Fort Madison, 259 Iowa 578, 145 N.W.2d 11 (1966).

It is uncontroverted that the accident in question took place when the minor Plaintiff fell from one of several storage tanks, still owned by the Defendant, on the premises. The particular tank had been used for kerosene storage. We hold that the explicit language of the deed reserved to the Defendant no right to maintain a kerosene storage tank on Plaintiff father's property.[8] As the Defendant does not claim to be lawfully on the Plaintiff father's premises under any other theory, his excessive use of the easement created by the deed is a trespass. *See* Beckwith v. Rossi, 157 Me. 532, 175 A.2d 732 (1961); Kaler v. Beaman, 49 Me. 207 (1860).

In sum, the erroneous construction of the deed in the lower court has precluded jury consideration of the viable issue of liability of the Defendant as a trespasser. From all the facts, a jury might reasonably conclude that such liability existed, making erroneous the direction of a verdict for the Defendant below. We must sustain the Plaintiffs' appeals and order a new trial in the Superior Court.

The entry will be:

Appeals sustained.

New trial ordered.

WEBBER, J., sat at oral argument but retired before the adoption of this opinion.

All Justices concurring.

---

7. The differences between a license and an easement, especially one in gross, are often slight. A license creates no interest in land, may be created orally, and is revocable, unless coupled with an interest. An easement is an interest in land, is mainly created by grant, and is of more permanent character. *See* 25 Am.Jur.2d Easements and Licenses §§ 3, 124 (1966). In the present case, the distinction is not critical since the excessiveness of use is evident no matter what the defendant's interest is called.

8. Although "implied authority to do all that is necessary to secure the enjoyment of such easement" (Hammond v. Woodman, 41 Me. 177, 203 (1856)) is also conveyed, this implied authority cannot allow actions which would vary the express terms of the easement grant.