1999 ME 71

**Timothy P. O'DONOVAN**

v.

**John A. McINTOSH Jr.**

v.

**Susan HUGGINS.**

Supreme Judicial Court of Maine.

Argued March 3, 1999.

Decided May 3, 1999.

Deborah M. Mann, Kenneth M. Cole III, Jensen Baird Gardner & Henry, Portland, for O'Donovan.

Michael D. Traister, (orally) Peter S. Plumb, Murray Plumb & Murray, Portland, for McIntosh.

Andrew W. Sparks, Drummond & Drummond, LLP, Portland, M. Roberts Hunt, (orally) Falmouth, for appellee.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Timothy P. O'Donovan and John A. McIntosh Jr. appeal from a partial summary judgment entered in the Superior Court (Cumberland County, *Cole, J.*) in favor of Susan Huggins. O'Donovan and McIntosh argue that the court erred when it declared that an easement in gross held by McIntosh over Huggins's property was not assignable. We agree and vacate the judgment.

[¶ 2] In 1987, McIntosh purchased real property at 184 Foreside Road in Falmouth. The property is adjacent to the Fish parcel[1] and separates the Fish parcel from Foreside Road. McIntosh also purchased an option on the Fish parcel and then optioned both 184 Foreside Road and his option on the Fish parcel to Casco Partners, Inc., which sought to construct a multiple lot subdivision on the Fish parcel. When Casco Partners did not proceed with the subdivision and McIntosh's option on the Fish parcel lapsed, McIntosh decided to sell 184 Foreside Road to Huggins and retain a right of way and an easement across it that would allow access to and the development of the Fish parcel.

[¶ 3] On May 30, 1989, McIntosh conveyed the property to Huggins by warranty deed, reserving an easement for access to the Fish parcel. Concerning the easement, the deed stated:

> Excepting and reserving for the benefit of the Grantor and his heirs and assigns, a right of way and easement for access (50) feet in width to be used in common with the Grantee, her heirs and assigns, extending northerly from Foreside Road.... Said right of way and easement shall (1) be for the purpose of ingress and egress to and from the lot herein conveyed and other land adjacent to and behind the above described parcel, commonly known as the "Fish parcel" and (2) not be located any closer to the house now standing on the property than 27 feet. The assigns of the Grantor herein shall be limited to those building and/or occupying a subdivision located on the above—mentioned "Fish parcel." Also reserving the right to install utilities ... over and under said right of way for the use and benefit of said other land. The foregoing right of way and easement shall also include the right of Grantor to enter on Grantee's land as is reasonably necessary to maintain, repair, and replace said utilities. The foregoing right of way and easement shall be subject to a duty owed by the Grantor to the Grantee, her heirs and assigns, to maintain, replace and repair the Grantee's property in the event of any disruption or damage caused to that property by the use of this right of way and easement.
>
> By acceptance of this deed the Grantor and Grantee agree to convey the right of way above mentioned to the Town of Falmouth in the event that it shall be accepted as a public way.

---

1. The Fish Parcel is so named because the Fish family owned this land.

The deed also incorporated by reference an attached side agreement that would be "binding on subsequent owners" of the easement and in which Huggins agreed not to actively oppose any application for development permits for the Fish parcel.

[¶ 4] In April 1995, O'Donovan, the president of Black Bear Development, Inc., entered into a purchase and sale agreement with the owners of the Fish parcel. On January 1, 1996, O'Donovan entered into a purchase and sale agreement with McIntosh for the easement.

[¶ 5] Black Bear filed an application for subdivision approval with the Town of Falmouth Planning Board. In January 1996, the Board held the first in a series of open public meetings to address the application. The Board eventually suspended the application after a dispute arose regarding the transferability of the easement.

[¶ 6] After the Board suspended the proposal, O'Donovan, in May 1997, filed a complaint against McIntosh and Huggins seeking, inter alia, a declaratory judgment pursuant to 14 M.R.S.A. §§ 5951–5963 (1980 & Supp.1998) concerning his right to purchase and sell the easement. McIntosh and O'Donovan filed a joint motion for a partial summary judgment, arguing that the easement may be transferred, conveyed, or otherwise assigned to O'Donovan. Huggins objected to the motion and filed a cross-motion for a summary judgment. The court granted Huggins's motion, concluding that the easement was not assignable. The court certified the judgment to allow O'Donovan and McIntosh to appeal pursuant to M.R. Civ. P. 54(b).

[¶ 7] An easement is a right of use over the property of another. See RESTATEMENT OF PROPERTY § 450 (1944); BLACK'S LAW DICTIONARY 509 (6th ed.1990). The law recognizes two different types of easements: an easement in gross and an easement appurtenant. An easement appurtenant is created to benefit the dominant tenement and runs with the land. See O'Neill v. Williams, 527 A.2d 322, 323 (Me.1987). To be appurtenant, however, the easement must also be attached to or related to a dominant estate of the grantor. See Anchors v. Manter, 1998

ME 152, ¶ 12, 714 A.2d 134, 139; O'Neill, 527 A.2d at 323. Here, because McIntosh owned no dominant estate to which the easement could be appurtenant, the easement is in gross. See Anchors, 1998 ME 152, ¶ 12, 714 A.2d 134, 139; O'Neill, 527 A.2d at 323. Consequently, the question becomes whether the easement in gross is assignable. We hold that the easement is assignable because the parties clearly expressed that intent in the language of the deed.

[¶ 8] Although we have categorically stated that an easement in gross is not assignable, see, e.g., O'Neill, 527 A.2d at 323, we have also suggested that such an easement may be assignable in certain circumstances. See Davis v. Briggs, 117 Me. 536, 540, 105 A. 128, 130 (1918) (quoting Cadwalader v. Bailey, 17 R.I. 495, 23 A. 20, 21 (1891)); see also White v. Crawford, 10 Mass. 183, 188 (1813) ("As to ways in gross, that they may be granted, or may accrue, in various forms, to one and his heirs and assigns, there can be no doubt."). Most important, we have never applied the rule—that an easement in gross is not assignable—to frustrate the parties' clear intent, as set forth in the deed, that the holder may assign the easement.

[¶ 9] Our focus on the intent of the parties in this case is in accord with those courts that assess the parties' intent to determine the alienability of an easement in gross. See, e.g., Lindley v. Maggert, 198 Mont. 197, 645 P.2d 430, 431 (Mo.1982) (easement freely alienable when no language in the deed exists to limit right to alienate); Weber v. Dockray, 2 N.J.Super. 492, 64 A.2d 631, 633 (Ct. Ch. Div.1949) (assignability depends on intention of the parties, the nature of the burden on the servient tenant, and circumstances existing at time the grant was made); Miller v. Lutheran Conference & Camp Ass'n, 331 Pa. 241, 200 A. 646, 651 (1938) ("There does not seem to be any reason why the law should prohibit the assignment of an easement in gross if the parties to its creation evidence their intention to make it assignable."); Farmer's Marine Copper Works, Inc. v. City of Galveston, 757 S.W.2d 148, 151 (Tex.Ct.App.1988) ("Although easements 'in gross' are personal to the grantee only, and are generally not assignable or transferable,

the parties may create an assignable easement in gross through an express assignment provision."). Moreover, such an approach is consistent with those authorities that increasingly recognize and advocate the free alienability of easements in gross. *See* RESTATEMENT OF PROPERTY §§ 491, 492 (1944) (alienability of noncommercial easement determined by the manner and terms of its creation); 2 AMERICAN LAW OF PROPERTY § 8.82 (1952) ("There seems to be no reason to deny to parties who create easements in gross the privilege of making them alienable if they wish to do so."); 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 34.16, at 34–218 (1998) (noting only barriers to alienability of easement in gross is finding of creator's manifest intent to bar alienation and courts' misplaced fear of "resultant surcharge" on the land); 3 HERBERT THORNDIKE TIFFANY, TIFFANY ON REAL PROPERTY § 761 (Supp.1998) ("[T]here is a growing recognition of the assignability of all easements in gross except those demonstrably intended to benefit only the individual who is its first recipient.").

▇ [¶ 10] The conclusion that an easement in gross is assignable when the parties intend is consistent with our general policy favoring the free alienability of property. The alienability of an easement in gross promotes the free alienability of land, a general policy of property law. *See* RESTATEMENT OF PROPERTY § 489 cmt. a (1944). The Restatement explains that "[t]his policy arises from a belief that the social interest is promoted by the greater utilization of the subject matter of property resulting from the freedom of alienation of interests in it." *Id.* In furtherance of this policy, we have adhered to the traditional rule of construction that whenever possible an easement is construed to be appurtenant to the land of the person for whose use the easement is created, thereby ensuring that the easement is alienable. *See Anchors*, 1998 ME 152, ¶ 10, 714 A.2d 134, 138; *LeMay v. Anderson*, 397 A.2d 984, 987 (Me. 1979); *Davis*, 117 Me. at 540, 105 A. at 129. Similarly, we have held that a profit a prendre—the right to take from the land something that is a product of the soil—is freely assignable even when that right is in gross. *See Beckwith v. Rossi*, 157 Me. 532, 175 A.2d

732, 734 (1961). In addition, to give effect to the intent of the parties and promote alienability, we have abolished the technical requirement that the word "heirs" be used to preserve an interest of perpetual duration. *See O'Neill*, 527 A.2d at 324. It is consistent with the policy of promoting a high degree of alienability that we hold an easement in gross may be assignable.

[¶ 11] Finally, we reject Huggins's argument that *stare decisis* compels us to hold that the easement in gross is not alienable despite the parties' contrary intent. Although we appreciate the need for uniformity and certainty produced by *stare decisis*, we have also recognized that "where the authorities supporting the prior rule have 'been drastically eroded, [and] ... the suppositions on which it rested are disapproved in the better-considered recent cases and in authoritative scholarly writings, and ... the holding of the [prior] case is counterproductive' to its purposes, the situation is appropriate for legal change by the court's decision." *Myrick v. James*, 444 A.2d 987, 998–99 (Me.1982). With respect to the nontransferability of an easement in gross, the primary argument proffered to support the rule is that alienability will unfairly burden the servient estate. The servient tenement holder, however, is protected because an easement holder may only use the easement in a manner consistent with the intent of the parties that created the easement. *See Guild v. Hinman*, 1997 ME 120, ¶¶ 6–7, 695 A.2d 1190, 1192–93; *see also* 2 AMERICAN LAW OF PROPERTY § 8.83 n. 1 (1952 & Supp.1977); 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 34.16, at 34–218. Moreover, modern authority almost unanimously rejects the restrictive rule against alienability. *See, e.g.*, JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND ¶ 9.03[3] (1995). ("[C]ommentators have unanimously supported judicial recognition that easements in gross may be transferred."). Because the reasons supporting the rule against alienability are no longer compelling and because modern authorities disapprove of the unduly restrictive nature of the rule, we conclude that the rule against alienability cannot be

used to frustrate the parties' intent that an easement be alienable.

 [¶ 12] The easement created by McIntosh and Huggins is alienable because the parties demonstrated their intent that the easement be alienable in the clear language of the deed. We construe the deed to give effect to the grantor's intent. *See Anchors*, 1998 ME 152, ¶ 8, 714 A.2d 134, 138. Here, the deed created an easement "[e]xcepting and reserving the benefit of the Grantor *and his heirs and assigns* ...." and limited the assigns "to those building and/or occupying" the Fish parcel. (Emphasis added.) McIntosh and Huggins also agreed to convey the right of way to the Town of Falmouth if the Town accepted it as a public way. Moreover, the side agreement referenced in and attached to the deed bound the "subsequent owners" of the easement and prohibited Huggins from opposing development of the Fish parcel. As expressed by the clear language of the deed, McIntosh and Huggins intended that McIntosh would be free to assign the easement. The court, therefore, erred when it concluded that the easement was not assignable.[2]

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

WATHEN, C.J., with whom CLIFFORD, J., joins, dissenting.

[¶ 13] I respectfully dissent. The intent of the parties is relevant in clarifying whether an easement is appurtenant or in gross. *See Anchors v. Manter*, 1998 ME 152, ¶ 10, 714 A.2d 134, 138; *Davis v. Briggs*, 117 Me. 536, 540, 105 A. 128, 129 (1918). Once that is determined, however, there is no proposition of Maine decisional law more firmly settled than the principle that an easement in gross is personal and not assignable. *See O'Neill v. Williams*, 527 A.2d 322, 323 (Me.1987) ("An easement in gross is a purely personal right, is not assignable, and terminates upon the death of the individual for whom it was created."); *Reed v. A.C. McLoon & Co.*, 311 A.2d 548, 552 (Me.1973); *Davis*, 117 Me. at 540, 105 A. at 129–30.

[¶ 14] *Stare decisis* embodies the "important social policy of continuity in law" and we have expressed our particular reluctance to abandon past precedent when to do so would "interfere with the valid reliance interests of litigants arising from contract rights, real property rights or rights to property by descent." *See Adams v. Buffalo Forge Co.*, 443 A.2d 932, 935 (Me.1982). If there is a need for changing the law, it is better addressed by the Legislature. Our ruling necessarily acts on the past as well as the future and is capable of resurrecting long forgotten easements to dash the settled expectations of landowners and title examiners. I would affirm the judgment.

---

2. O'Donovan and McIntosh also argue that the easement is alienable because it is commercial in character. The Restatement of Property provides that "[e]asements in gross, if of a commercial character, are alienable property interests." RESTATEMENT OF PROPERTY § 489 (1944). "An easement in gross is of a commercial character when the use authorized by it results primarily in economic benefit rather than personal satisfaction." *Id.* cmt. c. Common commercial easements in gross include easements for railroads, telephone and telegraph lines, and pipelines. *See, e.g., Boorstein v. Massachusetts Port Auth.*, 370 Mass. 13, 345 N.E.2d 668, 671 n. 6 (1976); *Banach v. Home Gas Co.*, 12 A.D.2d 373, 211 N.Y.S.2d 443, 445 (1961); RESTATEMENT OF PROPERTY § 491 cmt. b (1944). Other commercial easements include the use of land for parking lots, when the agreement between the parties granted use of lots "in connection with the operation" of a mass trans-

portation bus line, *Kansas City Area Transp. Auth. v. Ashley*, 485 S.W.2d 641, 645 (Mo.Ct.App. 1972), the use of land to drive a herd of cattle, which were raised for profit rather than for personal use, *Crane v. Crane*, 683 P.2d 1062, 1067 (Utah 1984), and a driveway leading to a commercial property, when the driveway "has been used exclusively for commercial purposes since its creation," *Douglas v. Medical Investors, Inc.*, 256 S.C. 440, 182 S.E.2d 720, 723 (1971).

O'Donovan and McIntosh argue that the easement is commercial in character because the easement was intended to facilitate a proposed commercial enterprise—the development of the Fish parcel—and because McIntosh created the easement with the intent to sell it for profit. Because we conclude that the easement is alienable on the basis of the parties' intent, we need not address this issue.