STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-00-33

DONALD L. GARBRECHT
LAW LIBRARY

SEP 17 2002

Lewis E. Moore d/b/a Newman Boats Inc.,
    Plaintiff

v.

Decision and Judgment

Philip R. Fuller,
    Defendant

Hearing on the complaint was held on August 16, 2002. Both parties were present and represented by counsel. Following the hearing, the parties filed written argument, which the court has considered.

From 1985 through April 1992, the defendant owned and operated a wholesale seafood distribution business in Southwest Harbor. The business premises were near but not on the water. In order to maintain a source of seawater that was necessary to hold the lobsters he sold, he obtained a license that allowed him the use of pipes, both intake and discharge, across the property of Newman Boats, Inc. ("NBI") which was located between his land and the water.[1] NBI was a boatbuilding concern and operated under the trade name, "Jarvis Boats Inc." At the time the license with the defendant was executed, the plaintiff, Lewis Moore, was the sole shareholder of NBI.[2] The written "Pipeline

---

[1] In 1985, the defendant acquired the wholesale business from a third party, which had a similar license agreement with NBI.

[2] In the caption of the complaint, the plaintiff has identified himself as "Lewis E. Moore d/b/a Newman Boats, Inc." The court treats Moore himself as the party-plaintiff. The complaint does not allege that the corporate entity is a separate party; it does allege that the "plaintiff" is a resident of Southwest Harbor (apparently referring to Moore rather than the corporation); and it appears that NBI does not even exist. Therefore, this opinion examines Moore's rights, and the judgment is framed accordingly.

1

License," *see* defendant's exhibit 1, which was executed in October 1985 and which was annually self-renewing, required the defendant to pay NBI the annual sum of $1,000.

In 1991, NBI encountered serious financial problems. A mortgagee foreclosed on NBI's real estate, part of which was the subject of the license agreement. The mortgagee then conveyed the real estate to KAM, Inc., whose sole shareholder was a Mr. Carter, the plaintiff's father-in-law. Carter purchased NBI's personal property. Moore then formed a new corporation, "Newboat Inc.," ("NI") which operated under the trade name of "Jarvis Newman Boats." Moore was the sole shareholder of the new entity. KAM, Inc. leased the real estate that NBI had owned to NI, and Carter leased NBI's former personalty to NI. NI then continued the boatbuilding operations.

NBI notified the Secretary of State that it ceased to do business on December 31, 1991. Moore testified that he believed that NBI's clerk "closed" the corporation.

NI ran into financial problems not unlike those that had plagued NBI. NI came to the point where it was not able to make lease payments to KAM, Inc. and to Carter on a sufficiently regular basis to allow the lease agreement to continue. Carter then sold the personalty to a third party, and KAM, Inc. did likewise with the land that NBI previously owned. NI ceased operations in October 2000 and is in the process of winding up its affairs. In October 1998, however, KAM, Inc. executed an instrument that purported to "assign[] the pipeline leasing agreement that it may have acquired from an Foreclosure action in 1991 to Jarvis Newman Boats, Inc. or Lewis E. Moore." *See* plaintiff's exhibit 1.

Over time, the defendant made cumulative payments of $6,500 toward the license. This would be sufficient to cover the obligations due through October 1991 and for $500 of the payment due for the year ending in October 1992. If that $500 were prorated for the 1991-92 license term, it would cover through March 31, 1992. The defendant closed his wholesale business in early April 1992. In January 1992, he had made a payment of $2,000, which (when considered in conjunction with previous payments) brought him current for the 1989-90 and 1990-91 license periods. At some subsequent point prior to April 1994, although not precisely disclosed by the trial record, the plaintiff contacted the defendant about arrearages that the plaintiff felt had accumulated under the license agreement. The defendant advised him that he had closed his lobster business in April

1992 and felt that he owed only through that time. In April 1994, the defendant then sent the plaintiff a payment of $500. The plaintiff accepted that payment.[3]

When the defendant closed his business in April 1992, his employees removed all visible seawater supply and discharge pipes that ran across the land previously owned by NBI. In 1998, he learned that other portions of the pipes might not have been removed, and he arranged for a contractor to remove those remaining pipes. In his complaint, the plaintiff alleges that all of the pipe that is the subject of the license was removed in July 1998.[4]

In the license at issue, NBI was the licensor, and the defendant was the licensee. The plaintiff claims to be the assignee of licensor's rights. The defendant argues that a license such as the one at issue here cannot be assigned and that the plaintiff therefore has no rights under the license. A license is a revocable privilege to enter upon or use another's land in a way that, in the absence of that privilege, would amount to a trespass. 4 POWELL ON REAL PROPERTY § 34.25 (Michael Allan Wolf ed. 2002). Indeed, the revocable nature of the licensee's interest serves to distinguish a license from an easement. *See Reed v. A.C. McLoon & Co.*, 311 A.2d 548, 552 (Me. 1973).[5] Because of the more transitory nature of a license, the general rule is that a "license ends . . . upon a conveyance of the servient estate by the licensor." POWELL at § 34.25. However, this general rule is available only to protect the interests of the licensor's grantee. *Chicago and North Western Trans. Co. v. City of Winthrop*, 257 N.W.2d 302, 304 (Minn. 1997). In other words, the new owner of the servient estate is not required to accept or tolerate the licensed use of the property by the licensee. A licensee, on the other hand, does not have standing to challenge the validity of the license on the basis that the ownership interest of the servient estate has been conveyed, because any harm caused by the

---

[3] Although the defendant has pleaded or argued a number of affirmative defenses, an accord and satisfaction is not among them, and the court therefore does not address that issue.

[4] At trial, the plaintiff moved to amend the complaint to strike that allegation and therefore extend his claim for payment under the license beyond June 1998. For the reasons stated on the record, the court denied that motion.

[5] For this reason, the court does not find the easement cases cited by the parties to be controlling.

continuation of the license is suffered by the licensor's successor rather than by the licensee. Therefore, in the case at bar, the defendant may not be heard to argue that the license – from which he benefited until at least April 1992 – is unenforceable.

The defendant also urges that he abandoned the use of the pipes in April 1992, when he closed his business. In support of this argument, he claims that the plaintiff should have been aware that there no longer was the usual traffic and activity associated with the defendant's business, which was located not far from the plaintiff's. However, the amount of truck traffic and other activity prior to April 1992 was not significant. More importantly, however, paragraph 2(f) of the license agreement requires the defendant to remove the pipes in the event that he seeks to terminate the lease either by notice under paragraph 1 or by abandonment under paragraph 2(f). Here, from the fact that contractors engaged by the defendant removed pipes in 1998, the court infers that the defendant failed to comply with this condition of termination.[6] Therefore, the defendant had not effectively terminated the license in April 1992. Rather, he did not satisfy the conditions of termination until 1998.

The defendant next argues that any recovery by the plaintiff is barred by the doctrine of laches.

> Laches is the omission to assert a right for an unreasonable and unexplained length of time. . . .It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right. . . .Whether the equitable doctrine of laches applies in a given circumstance is a question of law.

*Northeast Harbor Golf Club v. Harris*, 1999 ME 38, ¶ 19, 725 A.2d 1018, 1023-24 (citations omitted). Delay alone is an insufficient predicate for a claim to be barred by laches. *Longley v. Knapp*, 1998 ME 142, ¶ 10, 713 A.2d 939, 943. Here, however,

---

[6] The court construes the license to require that either notice to terminate or abandonment must be accompanied by removal of the pipes. The license allowed the defendant to "construct and maintain [the pipes] below the surface of the Newman Lot. . . ." "Pipeline License" at ¶ 1. Neither party offered evidence regarding the intention of the parties to the instrument as it related to any ambiguities in its terms. A mere notice to terminate use of the pipes, or the mere abandonment of that use, would not appear to be sufficient to relieve the defendant of any responsibilities under the lease because the pipes would still remain on the licensor's lot. Thus, removal of those pipes would appear to be a necessary condition to the termination of the license.

4

because the defendant had not removed the pipes from the servient estate, then even if the plaintiff had sent a bill for the arrearages under the license earlier in time, or even if he had brought this action earlier in time, the defendant would not have reduced his liability to the plaintiff, because until July 1998 he himself had failed to take the steps necessary to limit his exposure under the license agreement. That was a matter wholly within his control. Therefore, any delays attributable to the plaintiff have not prejudiced the defendant.

The remaining affirmative defenses raised by the defendant are addressed directly or indirectly in this order. The court does not find them to be meritorious.

Accordingly, the court concludes that the defendant is liable for moneys still due under the terms of the license agreement through July 1998. That liability is to be calculated for amounts owing through the end of the 1997-98 license period. The resulting amount is $6,500.

The entry shall be:

For the foregoing reasons, judgment is entered for the plaintiff, Lewis E. Moore, in the amount of $6,500, plus interest and costs of court.

Dated: September 7, 2002

_____
Justice, Maine Superior Court

FILED &
ENTERED

SEP 1 0 2002

SUPERIOR COURT
HANCOCK COUNTY