STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-00-21
JLH -HAN- 2/12/2004

Howard W. Clement et al.,
    Plaintiffs

v.

Findings and Decision

Arno B. Shea, Jr. et al.,
    Defendants

DONALD L. [illegible]
LA[illegible]

APR 1 3 2004

Hearing in this matter was held on August 18 and 19, 2003. Counsel for the plaintiffs was present along with some, but not all, of the plaintiffs themselves. Counsel for the defendants was present with defendants Cynthia Thibodeau and Phyllis Ihle. Defendant Arno Shea had died prior to the trial. Counsel for the defendants indicated that because his interest in the case had been conveyed to or had devolved to the remaining two defendants, no action was needed under M.R.Civ.P. 25(a), and that all matters involved in this case could be fully litigated and resolved without such action. Following the trial, the parties submitted written argument, which the court has considered.

At issue in this case is whether the plaintiffs have an easement by prescription over the land owned jointly by the surviving defendants, which consists of a road that has been in existence for nearly fifty years and which they use to gain access to their parcels of real estate located on or near the shore of Green Lake in Ellsworth.

A prescriptive easement is established upon proof of (1) continuous use of the servient estate (2) for at least twenty years, (3) under a claim of right adverse to the owner of the servient estate, and (4) with either the knowledge and acquiescence of the owner of the servient estate or a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed. *Eaton v. Town of Wells*, 2000 ME 176, ¶

1

32, 760 A.2d 232, 244. As proponents of the putative easement, the plaintiffs bear the burden of proving these elements by a preponderance of the evidence. *See Glidden v. Belden*, 684 A.2d 1306, 1317 (Me. 1996).

The road at issue here crosses the easterly end of the defendants' land and runs in roughly a north-south direction. It begins at the southeast corner of that parcel where it branches off from another road that runs in a westerly direction toward the lake and ends at the defendants' camp. *See generally* defendants' exhibit 2 (survey). The road at issue in this case was constructed in the mid-1950's, when the owners of several parcels located on the shore north of the defendants' property wanted a better means of access to those lots than the road that was then in existence (the Wormwood Road, connecting to Evergreen Way). Those lots are in the immediate area of what appears on defendant's exhibit 2 to be a stream. At that time, the defendants' property was owned by Arno Shea, who was the father of the two surviving defendants. The owners of the lots located to the north of Arno Shea's included Arno's brother, John Shea, and his brother-in-law, Leslie Stratton. Arno had constructed a road to his camp in the early 1950's, and he allowed John Shea, Leslie Stratton and one George Gillis to build the road that is in dispute here. Arno himself participated in the work. At the time the road was constructed, there were several camps on parcels now owned by some of the plaintiffs. Those landowners also worked on the road or made financial contributions used to subsidize its construction and maintenance. In 1955, John Shea, Stratton and Gillis formed a road association that was responsible for maintaining the road. All of this was done pursuant the arrangements made with Arno, under which he would permit them to build and use the road so long as the road association would remain responsible for its upkeep. Arno remained centrally involved in the road committee, serving, for example, as its chair in 1958. *See* defendants' exhibit 3. Arno also maintained records of payments made to the committee and the amounts disbursed from those receipts for materials used to maintain the road. *See id.*

The roadwork became something of a community and social project. The local lot owners who used the road knew each other, and they would routinely spend time clearing brush, filling in depressions and do other similar work. Children from those families would appear and be allowed to drive some of the equipment.

2

Over time, more camps were built on lots near the access provided by the road that traversed over Arno's land. Not all of those landowners expressly sought Arno's permission to use the road. However, as John Shea, Jr. testified, in order to be able to use that road, the owners of those lots either worked on the road or made financial contributions toward its upkeep, thus perpetuating the original arrangements. Up to the present time, there exists a group or committee that is responsible for road maintenance. Arno was occasionally approached by people who wanted to secure a deeded right of access using the road. However, Arno consistently refused those requests. In approximately 1981, one of the lot owners asked Arno to allow s power utility to run power lines across his (Arno's) land in the approximate location of the road. Arno refused because it would require a formal right-of-way, which he was unwilling to grant. Power lines ultimately were run to the lakefront parcels, but those lines largely circumvented Arno's land.

Due to increasing traffic on the road, particularly during the winter when, without Arno's permission, some lot owners sometimes plowed the road, in November 1995 Arno caused a notice to be posted at six locations along the length of the road that passed over his property. The contents of the notice satisfied the requirements of 14 M.R.S.A. § 812. Further, the certificate attached to the copy of the notice admitted into evidence conclusively establishes, under the terms of section 812, that it was posted in a way that satisfied the statutory notice requirements. This posting has the effect of fixing the prescriptive rights of the plaintiffs as of November 1995, because section 812 provides that upon such posting, claimants of a prescriptive easement cannot obtain prescriptive rights thereafter. Then, in 1999, Arno posted a sign expressing his intention to close the road. The erection of that sign led to this lawsuit, in which the plaintiffs claim that they have prescriptive rights to use the road and that Arno is no authorized to close the road or otherwise interfere with their rights.

The defendants argue that the permission granted by Arno Shea for the nearby landowners to use the road was a personal right. In effect, the defendants argue that any rights to use the property consisted of an easement in gross, rather than an easement appurtenant. "An easement appurtenant is created to benefit the dominant tenement and runs with the land." *O'Donovan v. McIntosh*, 1999 ME 71, ¶ 7, 728 A.2d 681, 683; *see*

3

*also O'Neill v. Williams*, 527 A.2d 322, 323 (Me. 1987). An easement that "does not profess to create a benefit in favor of any land" is regarded as an easement in gross. *ALC Development Corp. v. Walker*, 2002 ME 11, ¶ 14, 787 A.2d 70, 775. Easements appurtenant are more favored than easements in gross, and "[w]henever possible an easement should be fairly construed to be appurtenant to the land of the person for whose use the easement is created." *Id;*; *Stickney v. City of Saco*, 2001 ME 69, ¶ 33, 770 A.2d 592, 605; *O'Neill*, 527 A.2d at 323. Here, the best evidence reveals that the purpose of the easement was to provide access to the lots as an alternative to the Wormwood Road. Further, the succession of lot owners who were able to benefit from the use of the road located on the defendants' property is at least as suggestive as an easement appurtenant as one in gross. Thus, the court concludes that the rights to the use of the road were not licenses held personally by the users but rather was an interest that attached to the lots themselves. That interest therefore survived the immediate parties and triggers the prescriptive easement analysis.

As is noted above, in order to establish the creation of a prescriptive easement, the claimant must show, among other things, that the use of the servient estate manifested a claim of right that was adverse to its owner and that the owner of the servient estate acquiesced to that use. With respect to the first of these two elements, ""[a] use is adverse when a party has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding the owner's claims entirely, using it as though he owned the property for himself." *Stickney*, 2001 ME 69, ¶ 21, 770 A.2d at 602 (citation and internal punctuation omitted); *see also Taylor v. Nutter*, 687 A.2d 632, 635 (Me. 1996). Here, the road at issue was constructed with Arno Shea's express permission. He agreed to an arrangement under which several of the local landowners could construct the road and then use the road, if they maintained the road and paid for the expenses of maintenance. Shea himself performed some of the work involved in that construction and maintenance, and, at least for a number of years, he was actively involved in the committee that coordinated the maintenance and collected payments or dues used to cover expenses.

The evidence shows that the following claimants have either worked on the road, or have made financial contributions toward the upkeep of the road, or have done both:

4

Howard and Barbara Clement; Floyd and Betty Melvin; Robert and Ruth Sherwood; Walter and Paula Knudson; Warren and Mary Hall; Priscilla Stevenson; Wayne Bragdon; and Dennis and Pamela Harmon. Within twenty years (the prescriptive period) of 1995 (when the prescriptive period ended by operation of statute under section 812), the predecessors in interest of the following claimants may have either worked on the road or made financial contributions toward the upkeep of the road: Wayne Bragdon (Holly Shea worked on the road; she conveyed the lot to Bragdon in 1985); Lois Emerson (as John Shea, Jr. testified, George Gillis worked on the road; Gillis conveyed the land to himself and Emerson jointly in 1976); Richard and Delia Gray (as John Shea, Jr. testified, Harry Keiser worked on the road; he conveyed the lot to the Grays in 1977); Leon and Barbara Beal (as John Shea, Jr. testified, Keep worked on the road; he conveyed the lot to the Beals in 1977); Dennis and Pamela Harmon (as John Shea, Jr. testified, Francis Keep worked on the road; he conveyed the lot to the Harmons in 1977); and Roscoe and Loretta Berry (as John Shea, Jr. testified, Arthur Berry worked on the road; he conveyed the lot to the current owners in 1979). In some cases, the record does not clearly show when these predecessors in interest performed that work. The record does demonstrate, however, that those predecessors owned the subject parcels within the prescriptive period ending in 1995. Because the claimants bear the burden of proving that the owners of the their lots used the road other than in a permissive manner throughout the prescriptive period, any uncertainty about the dates when the predecessors performed that work operates against their claim here. Additionally, as Stevenson testified, James Cochrane was a member of the road committee and was the person to whom she paid her dues.

Consequently, the claimants identified in the preceding paragraph have failed to prove that their use of the road was pursuant to a claim of right adverse to the owners, because at some point that may well be within the prescriptive period (or, putting it more precisely, at some time that they have not shown to be outside of the prescriptive period), either they or their predecessors in title used the road in the manner that Arno Shea authorized, namely, in exchange for bearing some form of responsibility to ensure the upkeep of the way. Whether or not each of these individual claimants were aware of the terms of the permission granted by Arno Shea, the fact remains that as a class, they had

his permission to use the road, so long as they made some contribution to its maintenance, either by providing labor or money toward that maintenance.

The next element of a prescriptive easement claim that is problematic for the plaintiffs is their allegation that the defendants acquiesced to their use of the road. "Acquiescence implies passive assent or submission to that use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it." *Stickney*, 2001 ME 69, ¶ 23, 770 A.2d at 602 (citation and internal punctuation omitted). As is discussed above, the road that is the subject of the claim at bar was constructed with the express permission and consent of Arno Shea. Further, he permitted the nearby landowners to use that road if the road were maintained. There is no evidence that Shea withdrew that consent.[1]

The owner of the servient estate may be presumed to acquiesce to the use of the property if that use is open, notorious, visible and uninterrupted for the twenty year prescriptive period. *Id.*, ¶ 16, 770 A.2d at 601. Here, the use of road made by the plaintiffs and their predecessors was open and notorious (that is, putting Arno Shea on notice of that use, *see Taylor v. Nutter*, 687 A.2d 632, 635 (Me. 1996)), and visible and uninterrupted. Thus, the predicate for the presumption is apparent in this record. Nonetheless, the court declines to invoke the presumed conclusion of this factual predicate, because the evidence establishes clearly that Arno Shea authorized and permitted the claimants to use the road as they did, until he became concerned about the volume of traffic in 1995, prompting him to post the notice. Thus, in the circumstances of this case, the statutory presumption is not warranted by the evidence and, in fact, is vitiated by that evidence.

---

[1] Several of the trial witnesses testified that Shea placed a chain across a road on his property during the winter season for some period of time until the early 1980's, when he apparently concluded that the chain posed a safety hazard to those who tried to use the road. The evidence on this point, however, was quite varying. The trial record includes testimony that the chain was located so as to prevent or inhibit the use of the road at issue here; there is testimony that the chain only prevented access to the branch of the road that led to Arno Shea's camp and that it did not affect passage on the road used by the plaintiffs; and there is testimony that no one put up such a chain barrier. There is no principled way to resolve or reconcile these factual claims, and, by default, the court cannot make any findings regarding them.

6

The failure of proof on the element of acquiescence undermines the claim of each of the plaintiffs. In connection with the discussion of the plaintiff's claim of adverse, unpermitted use, the court has identified those plaintiffs and their predecessors in title who actively participated in the maintenance of the road, which was the foundation for the permission that Arno Shea granted for the use of that road. The claims of those plaintiffs also fail under the present analysis, because, as a result of their involvement in the upkeep of the road, they retained Arno Shea's consent to use the road, thus defeating their allegation that he submitted to that use. Beyond those plaintiffs, the trial record is silent on whether the remaining plaintiffs either worked on the road or made contributions to pay the associated expenses.[2] That absence of evidence is immaterial because regardless of whether they did so, Arno Shea permitted them to use the road so long as the road was maintained. Thus, the defendants did not merely submit or assent to the plaintiffs' use passively. Rather, all of the plaintiffs were permitted to use the road because Arno Shea remained satisfied that the conditions for that use were fulfilled.

Finally, the court finds that in addition to and independent of the reasons noted above, some of the plaintiffs have not established use of the road for the prescriptive period. This group of plaintiffs consist of those who did not own their land for the twenty year prescriptive period as of November 1995, when the prescriptive period ended, and who have not established prior, uninterrupted use that would support a claim of prescriptive use for the requisite duration. *See Gutcheon v. Becton*, 585 A.2d 818, 822 (Me. 1991) (tacking of periods of use by parties who have privity of title). Parties whose claims fail for this reason include Maurice and Gail Campbell; Thomas and Janet Bennett; Leo Chase; David and Ramona Wade; Eric and Patrick Ignaszewski; John Francis Ignaszewski; Kim Hughes; and Richard and Delia Gray.

Therefore, because each of the plaintiffs has failed to prove by a preponderance that the defendant acquiesced to their use of the road, within the meaning given to that term in the present context; and because some of the plaintiffs have failed to prove that they used the road under a claim of right adverse to the defendants; and because some of

---

[2] It appears that the landowners were expected to do so, and the court certainly could draw that inference with respect to those remaining plaintiffs. However, resolution of this factual issue is not required because these parties have failed to prove that that the defendants submitted to their adverse use of the road.

the plaintiffs have not proven use of the road for the prescriptive period, the court concludes that there does not exist an easement by prescription over the road that crosses the defendant's land.

The entry shall be:

For the foregoing reasons, judgment is entered for the defendants. The court finds that there does not exist a prescriptive easement passing over the property owned jointly by defendants Cynthia S. Thibodeau and Phyllis S. Ihle, described in a deed recorded in the Hancock County Registry of Deeds at book 1775 page 571, that was claimed to provide access to and run for the benefit of the land owned by the following parties, whose land is more fully described in deeds recorded in the Hancock County Registry of Deeds at the following book and page numbers: Howard W. and Barbara S. Clement (book 1162 book 230); Francis R. and Mabelle C. Ignaszewski (book 1175 page 230); Floyd W. Melvin, Jr. and Betty A. Melvin (book 1126 page 123); Robert E. and Ruth B. Sherwood (book 1126 page 125); Walter H. Knudson, Jr. and Paula B. Knudson (page 1148 page 433); Warren and Mary Hall (book 1468 page 211); James R. and Helen J. Cochrane (book 1479 page 88); Ray R. and Mae A. Pelletier (book 1982 page 8); Priscilla E. Stevenson (book 1796 page 400); Maurice E. and Gail E. Campbell (book 1572 page 78); Bruce M. and E. Lynne Sawyer (book 1897 page 96, and book 2070 page 138); W. Thomas and Janet R. Bennett (book 1505 page 206); Leo E. Chase (book 2196 page 104); David R. and Ramona M. Wade (book 2493 page 333); Wayne Bragdon (book 1531 page 451); Eric D. and Patricia D. Ignaszewski (book 1943 page 4); John Frances Ignaszewski (book 1943 page 4); Kim I. Hughes (book 1943 page 4); Lois Emerson (book 1271 page 568); Richard W. and Delia I. Gray (book 1291 page 429); Leon E. Beal, Jr. and Barbara H. Beal (book 1301 page 5); Dennis C. and Pamela W. Harmon (book 1301 page 10); Roscoe L. and Loretta B. Berry (book 1359 page 569).

The defendants are awarded their costs of court.

The temporary restraining order dated August 31, 2000, is vacated effective immediately.

Dated: February 10, 2004

_____
Justice, Maine Superior Court

FILED &
ENTERED

FEB 12 2004

SUPERIOR COURT
HANCOCK COUNTY

8